WHITE, *Appellant*, v. CLASBY *et al.*

1. **Married Woman**: CONVEYANCE OF DOWER INTEREST. Money paid a married woman in consideration of her conveyance of her dower interest in land is her property and not that of her husband.

2. ———— : HUSBAND'S INTEREST IN HER PERSONAL PROPERTY. Personal property given a married woman, subsequent to the married woman's act of 1875, is her property and not the property of her husband.

3. ———— : RIGHTS OF HUSBAND AT COMMON LAW AND IN EQUITY. At common law marriage vested in the husband the personal property of the wife then owned or thereafter acquired by her and of which he obtained possession; but in equity the wife had such separate existence from her husband that she could have and hold a separate estate.

4.    ——— : ——— : PERSONAL PROPERTY : WAIVER BY HUSBAND OF HIS
RIGHTS. . The husband may waive his right to his wife's personal
property and permit her to retain the same free from his marital
claims, and this he may do though the property is not a technical
separate estate.

5.    ——— : PURCHASE OF PROPERTY BY WIFE WHEN HUSBAND IS INSOL-
VENT. Purchase of property, real or personal, by the wife of an
insolvent debtor is a suspicious circumstance until it is made to
appear that the purchase was with her own money or property.

6.    ——— : ——— : PRESUMPTION. When, in such case, the contro-
versy is between the wife and the husband's creditors a presump-
tion arises that the purchase by the wife was with the means of
the husband ; but it devolves upon the plaintiff to make out a
case from which the presumption will arise before it devolves
upon the defendant to produce rebutting proof.

*Appeal from Vernon Circuit Court.*—HON. CHAS. G.
BURTON, Judge.

AFFIRMED.

*M. T. January* for appellant.

(1) In a contest between the creditors of the
husband and the wife, there is and there should be a
presumption against her which she must overcome by
affirmative proof, and recent married woman's statutes
have not changed this rule. *Seitz v. Mitchell*, 94 U. S.
580. (2) In the absence of evidence that land pur-
chased during coverture by a married woman was paid
for with her separate means, it will be presumed that her
husband furnished the money. *Sloan v. Torry*, 78 Mo.
623 ; *Seitz v. Mitchell*, *supra*, and cases there cited.
(3) A voluntary disposition of property or money by
an insolvent is a fraud upon existing creditors, and the
property or money can be followed and appropriated so
long as it can be traced and remains in the hands of a
purchaser with notice. *Sloan v. Torry*, *supra*. (4) If
an insolvent husband pays part only of the purchase
price of land, or furnishes money to improve land the

title to which is in his wife, his creditors may subject the husband's interest to payment of their debts. 28 N. W. Rep. 32.

*Stratton & Stone* for respondents.

( 1 )  Irrespective of any statute, courts of law as well as equity recognize the doctrine that personalty may be the absolute property of the wife under certain conditions ; and the separate title of the wife to personalty may be established by words, acts and conduct as well as by writing ; and where the proof of the ownership is clear, the fact that her husband is indebted does not affect her right. *McCoy v. Hyatt*, 80 Mo. 130. While the legislature, by an enactment, could not divest the marital interest of the husband already acquired in property through the wife, yet, where he consents thereto, and by act and word recognizes the wife's separate ownership, before the rights of any of his creditors have attached, as seems to be the case here, she may assert a separate claim to such property coming to her prior to the act of 1875. *McCoy v. Hyatt, supra.* Claim and exercise of ownership by her, with the knowledge and acquiescence of the husband, especially where this fact is public, without fraud upon existing creditors of the husband, and during a number of years, are facts sufficient to entitle the wife to have the opinion of a jury, or a chancellor, on the issue of separate property. 2 Bishop on Married Women, secs. 34, 35 ; *Holthaus v. Hornbuckle*, 60 Mo. 443 ; *Welch v. Welch*, 63 Mo. 57 ; *Coughlan v. Ryan*, 43 Mo. 99. There was sufficient evidence in this case to entitle the interpleader, under proper instructions, to go to the jury as to her separate ownership of the horses. ( 2 )  The cases of *Seitz v. Mitchell*, 94 U. S. 580, and *Sloan v. Torry*, 78 Mo. 623, relied upon by appellant, are entirely different from the case at bar.  In the case at bar, the record shows that Mrs. Clasby purchased the Kansas City property for

two thousand dollars and paid fourteen hundred dollars thereon out of her own money. It does not affirmatively appear who paid the remaining six hundred dollars, or when or how they were paid; but it does appear that the husband was utterly insolvent. (3) We insist under the married woman's statutes, as they existed in this state in 1878, there ought to be no presumption of payment by the husband. Otherwise a creditor of the husband, seeking to reach the wife's realty, need only show that she acquired her land during coverture. He need only prove the date of marriage and introduce the deed record to show the date of acquisition, and thereupon the law will presume the husband paid for the land, and that it is his for the purposes of the creditor.

BLACK, J.—On October 6, 1882, there was conveyed to the defendant, Cynthia M. Clasby, three hundred and sixty acres of land in Vernon county. In November, 1883, the plaintiff obtained a judgment against James Clasby, the husband of Cynthia, for eighteen hundred and thirty-nine dollars, on a cause of action which accrued in 1875. This is a suit in equity to subject the land in the name of the wife to the payment of the debt due by the husband to plaintiff. The question is whether this Vernon county land was purchased with the money of James Clasby.

The evidence shows that James Clasby owned some five or six hundred acres of land in Clinton county and a small tract, of little value, in Buchanan county. He became insolvent and judgments were recovered against him, under which the Clinton county lands were sold, and the First National Bank of St. Joseph became the purchaser. On the twenty-second of February, 1879, the bank paid Mrs. Clasby ten hundred and fifty dollars for her dower interest in the lands. Her deed to the bank included the small tract in Buchanan county, but it appears the property in that county was covered with

judgment liens so that all her deed conveyed was her dower interest. That this ten hundred and fifty dollars was her money and not that of her husband there can be no doubt.

The proof is clear and undisputed that at this time she received from her father's estate two hundred dollars; from the estate of her grandfather fifty dollars; and from her son who came home from California in 1878 the further sum of fifty dollars. Her evidence is that she sold a horse for two hundred and fifty dollars; so that in all she had fourteen hundred dollars. For three or four years prior to October, 1882, she and her husband resided at Kansas City, and while there she purchased a piece of property at the price of two thousand dollars, which she sold at a subsequent date for eight thousand dollars. With this money she purchased and improved the land now in question, much of the money being used by way of making improvements.

The foregoing facts are disclosed by evidence which is not questioned. The first contention of the plaintiff is, that the horse, which was sold for two hundred and fifty dollars, was the property of the husband. The only evidence upon this subject is that of Mrs. Clasby, which is as follows: "I sold a horse I had for two hundred and fifty dollars; I raised him; he was three years old; I sold him about 1878; I owned the mother of the horse. My father gave me some horses before I was married and some since. I always claimed the horses as my own; my husband never claimed them." It does not appear when the brood mare, of which the horse in question was the foal, was received by her from her father. If subsequent to the married woman's act of 1875, then the horse was her property, beyond all doubt. But we do not regard this as a matter of any importance in this case. At common law marriage vests in the husband the personal property of the wife then owned or thereafter acquired by her and of which he obtains

possession. The rule was based upon the notion of identity of husband and wife ; but in equity the wife had such a separate existence from her husband that she could have and hold a separate estate. The husband, it is settled, may waive his right to his wife's personal property and permit her to retain the same free from his marital claims, and this, too, though the property is not a technical separate estate. *Botts v. Gooch*, 97 Mo. 88, and cases cited. The proof is clear that Mr. Clasby never claimed any ownership of these horses, and that they were always treated as the absolute property of Mrs. Clasby. The horse was, therefore, her property and not the property of her husband.

The evidence shows that, of the two thousand dollars paid for the Kansas City property, fourteen hundred dollars was the money of Mrs. Clasby ; but the record is exceedingly reticent as to who furnished the other six hundred dollars. A purchase of property, real or personal, by the wife of an insolvent debtor is justly regarded as a suspicious circumstance, until it is made to appear that the purchase was with her own money or property. When it is shown that the husband was insolvent at the time of the purchase by the wife, and the controversy is between her and his creditors, a presumption arises that the purchase by the wife was with the means of the husband. *Sloan v. Torry*, 78 Mo. 623 ; *Seitz v. Mitchell*, 94 U. S. 580. It, however, devolves upon the plaintiff to make out a case from which the presumption will arise, before it devolves upon the defendant to produce rebutting proof.

Both Mr. and Mrs. Clasby testified at the instance of the plaintiff, and their evidence appears to be unusually frank, there being no disposition shown to evade a full disclosure. It is clear that Mr. Clasby's property was exhausted by the executions, and from the record it seems quite clear that he had no means. Mrs. Clasby's

evidence shows that her son has an interest in the farm in question to the extent of one hundred and twenty acres, which he has improved. Under these circumstances the fair inference is that the son, and not the husband, furnished the six hundred dollars. Certain it is that all the evidence in the case, as far as it goes, shows perfect honesty and fair dealing on the part of this woman. And it is our opinion the plaintiff failed to make out any case whatever.

The judgment is, therefore, affirmed. All concur.