BOYNTON *et al.* v. MILLER *et al.*, *Appellants.*

Division Two, June 14, 1898.

1. **Husband and Wife:** ADMISSIONS BY THE HUSBAND. An admission by the husband that land on which he lived was his wife's, is competent and original evidence against him and all claiming under him.

2. ———: WIFE'S PERSONAL PROPERTY: AT COMMON LAW. Although the money of the wife passed by the marriage to the husband at common law, yet that principle does not apply except to the wife's *own* money. It does not apply to that which she holds as trustee. And where she sells a tract of land which belonged to her first husband and receives the money therefor, she holds such money and its increase as trustee for her children by such husband; and if she vests it in land and the title is taken in the name of her second husband, the title will be divested out of him and vested in such children.

3. ———: ———: ———: WAIVER BY HUSBAND. Although the money of the wife would pass by the marriage to the husband at common law, yet he waives whatever marital right he has thereto by permitting her to buy and sell and deal with it as she wishes.

4. ———: ———: MACHINATIONS OF HUSBAND: IMPROVEMENTS. Where the money of the wife buys land, and through the machinations of her husband the title is taken in him, he can maintain no compensation for improvements made thereon, as against her legal representative.

5. ———: ———: WIFE'S EQUITABLE LANDS: LIMITATIONS: JOINT OCCUPANCY. Where land is paid for by the wife's money, and the title is by his machinations taken in him, and they jointly occupy the land, and he admits that the land is hers, such holding by him is not adverse to her, and the statute of limitations does not begin to run against her children by another marriage until her death.

*Appeal from Sullivan Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

*A. W. Mullins* for appellants.

(1)   Prior to the act of the General Assembly of Missouri of March, 1875, money or other personal property of the wife, not her separate estate, became the property of the husband *jure mariti*, and if invested in land by him, no resulting trust would thereby be created in favor of the wife. *Modrell v. Riddle*, 82 Mo. 31; *Woodford v. Stephens*, 51 Mo. 443.   (2)   And in a suit in equity to divest title, the evidence, to warrant a decree for plaintiff, must be so clear, definite and positive as to leave no reasonable ground for hesitancy in the mind of the chancellor. *Forrester v. Scoville*, 51 Mo. 268.   (3)   In the absence of evidence to the contrary the common law is presumed to be in force in other States of the Union. And under the common law the personal property owned by the wife at the time of her marriage and thereafter acquired by her became the property of the husband *juri mariti*. *Meyer v. McCabe*, 73 Mo. 236; *Warren v. Lusk*, 16 Mo. 102.   (4)   Testimony as to verbal admissions of persons, since dead, is to be received with great caution, and whenever it is attempted to prove resulting trusts by virtue of such admissions, the testimony must be clear, strong and unequivocal, and leave no room for doubt in the mind of the chancellor as to the existence of such a trust.   And the admissions should be supported by other circumstances going also to show the existence of the trust.  *Ringo v. Richardson*, 53 Mo. 385; *Woodford v. Stephens*, 51 Mo. 443.  (5) In the absence of any satisfactory showing that the wife purchased property with her own separate funds, the presumption is a violent one that the husband furnished the means of payment. *Lins v. Lenhardt*, 127 Mo. 271; *Seitz v. Mitchell*, 94 U. S. 580; *Hoffman v. Nolte*, 127 Mo. 134;

*Sloan v. Torry*, 78 Mo. 625; *Weil v. Simmons*, 66 Mo. 620.

*John P. Butler* and *John M. Swallow* for respondents.

(1) The rule of the common law, that the marriage vests in the husband the personal property then owned, or thereafter acquired by her, applies only to such property as he may have reduced to actual possession. *Botts v. Spencer*, 42 Mo. App. 184; *Botts v. Gooch*, 97 Mo. 90; *White v. Claseby*, 101 Mo. 167; *Roberts v. Walker*, 101 Mo. 597; *Bank v. Winn*, 132 Mo. 86. (2) And yet, in relation to her property whether reduced to actual possession or not he can by his acts and declarations release her property from his marital rights. *Clark v. Clark*, 86 Mo. 114. (3) And where the rights of creditors have not intervened, evidence of his declarations is enough to establish such a trust against him and his personal representatives. Abb., Trial Ev., pp. 173, 174; 9 Am. and Eng. Ency. of Law, 801. (4) Under the circumstances of this case Jane F. Miller, having purchased and paid for the land in controversy, equity declares John Miller and his heirs trustees for her and her heirs regardless of the rule of the old common law. *Cox v. Cox*, 91 Mo. 71; 22 Am. and Eng. Ency of Law, 34; *Pritchard v. Wallace*, 70 Am. Dec. 254; 14 Am. and Eng. Ency. Law, 580; *Standeford v. Devol*, 83 Am. Dec. 351; *McGovern v. Knox*, 8 Am. Rep. 80; *Bank v. Winn*, 132 Mo. 86. (5) Where an estate is purchased in the name of one person, and the consideration is paid by another, a resulting trust arises in favor of the person who has paid the consideration. 4 Kent's Com., p. 306; 2 Story's Eq., secs. 1201, 1201 d.; 1 Perry on Trusts, secs. 124–127; *Price v. Kane*, 112 Mo. 412; *Johnson v. Quarles*, 46 Mo. 423; *Winn v. Cory*, 48 Mo. 346; *Ringo*

*v. Richardson*, 53 Mo. 385; *Kennedy v. Kennedy*, 57 Mo. 73; *Rogers v. Rogers*, 87 Mo. 257; *Jackson v. Wood*, 88 Mo. 76; 10 Am. and Eng. Ency. Law, 4. (6) The husband can claim no compensation for improvements put upon his wife's land during the marriage. *Mirable v. Jordan*, 42 Am. Dec. 441; 14 Am. and Eng. Ency. of Law, 579–625; *Webster v. Hildreth*, 78 Am. Dec. 632; *O'Brien v. Joyce*, 117 Mass. 360. (7) Possession taken by the husband in right of the wife, has the same effect as if it were her own independent possession. He can not hold adversely. *Meriman v. Caldwell*, 46 Am. Dec. 537; *Hendricks v. Rasson*, 53 Mich. 575; *Young v. Adams*, 58 Am. Dec. 664; *Bowie v. Stonestreet*, 61 Am. Dec. 318; *Dyer v. Whittler*, 89 Mo. 81, overruling *Valle v. Obenhours*, 62 Mo. 81; *Dyer v. Bannock*, 65 Mo. 392; *Clark v. Clark*, 20 O. S. 128. (8) The declarations of a person in possession of land, as to the character of that possession, is admissible as part of the *res gestae*. *Harper v. Moore*, 114 Mo. 317; Abb., Trial Ev., pp. 169–174.

SHERWOOD, J.—This proceeding in equity was instituted by plaintiffs to divest out of defendants the title to a certain improved farm of one hundred and sixty acres. The result of the proceeding was the granting of the prayer of the petition.

The case turns on the point as to what party, whether John Miller or his first wife, furnished the money which bought the litigated land. She had been a Mrs. Flanders, and John Miller a hired hand on the farm during her husband's lifetime. About three years after the death of Flanders, she, then being about forty, led John Miller to the altar, he then being about *twenty-three*. This was in 1846 as to date, and Ohio as to State. Of the children born of the marriage of Jane F. Sebring and John M. Flanders, all died in

infancy, except Elizabeth Flanders, who subsequently became the wife of Sumner Boynton, and is now one of the plaintiffs herein; and Cora V., the only surviving child of the marriage between Jane F. Sebring Flanders Miller, and John Miller, afterward married Fred Quint, and she being insane, appears as one of plaintiffs through him as her guardian.  About 1852 Elizabeth Flanders and Sumner Boynton became husband and wife and removed to a point near Greencastle, Sullivan county.

Mrs. Miller, it appears, was a thrifty, money-saving, business-like woman.  She received from her first husband's estate $491.39, and to each of the three surviving children there was also distributed the sum of $163.79 of the personal estate appraised.  There was also the sum of $1,200 which came into her hands, this sum being the product of the sale of a tract of which John M. Flanders, her first husband, sold about a year before to one Gunn.  This sum was not inventoried by her nor her co-administrator, but remained in her possession after close of the administration of her first husband's estate.  With the aggregated shares of the three surviving children she bought the Fisher place, a little farm of sixty acres for the children, situate on Dogwood Ridge, and on this the family lived.  Subsequently to this purchase Mrs. Miller bought, sold and exchanged property; buying in her own name and selling or exchanging in the same way, going at one time to Massae county, Illinois, with a relative, and buying a piece of land there.  Miller, it seems, at that time had no means of his own, and in 1849 with means furnished him by his wife, he went to California, and subsequently twice returned to Missouri and California, and in 1858 or 1859 returned to the latter State for the last time.  In 1854, John and Jane Flanders Miller, who had become the joint purchasers of the Fisher

place at a sale made by the curator of the children, sold that place for about $900. Whether Miller was successful in California does not satisfactorily appear; some of the evidence would tend to show that he was, some rather to the contrary.

In 1856 Mrs. Miller went on a visit to Missouri, and while there she bought two hundred acres of land, one hundred and sixty acres of which constitutes the property in controversy. For this she paid $500, and received a title bond from Noell, conditioned that on payment of the residue of the purchase price, $500, he would make her a conveyance. Having secured this title-bond, Mrs. Miller left it with Judge Boynton, her son-in-law. In 1857, Mrs. Miller sent the balance of the purchase money to Noell by Boynton, and thereupon Noell executed and delivered to Boynton a deed for his mother-in-law Mrs. Miller. A few days thereafter Boynton, at the request of Miller, and on his representation that Mrs. Miller wanted it that way, procured Noell, without Mrs. Miller's knowledge or consent, to execute the deed to Miller, and thereupon the old deed was destroyed, and the title-bond delivered to Noell. In 1861, Mrs. Miller and child, Cora V., went to California, remaining there until 1870, when they removed to Sullivan county, Missouri, and settled on the property in dispute. Miller, thereupon proceeded to improve the property, expending thereon some $2,000 or $3,000; seemed to be prosperous, and several hundred acres were added to the farm. Mrs. Miller died in 1885. In 1892 it seems Miller married again, and after this marriage a child was born, named Ruth Miller, one of defendants in this cause. In 1893 Miller made a will whereby he devised and bequeathed his property real and personal to his widow, Cora V. Quint and Ruth Miller in equal parts. But this will gave nothing to Elizabeth Boynton.

During his lifetime, and while in possession of the property in question, Miller frequently admitted that it was his wife's land. This testimony was competent against him and all claiming under him. *Meier v. Meier*, 105 Mo. 411; *Anderson v. McPike*, 86 Mo. 293. Such declarations are original evidence. 1 Greenl. Ev. [14 Ed.], sec. 109.

It may be conceded that the money of the wife would pass by the marriage to the husband at the common law, and that the common law prevailed in Ohio at the time of the occurrences heretofore mentioned; still with this concession, that principle would not apply except to the wife's *own* money, not to that which she held as trustee, and in this capacity she certainly held the $1,200 and its increase, in trust for her Flanders children, of whom Elizabeth Boynton is the sole survivor. And as every one is presumed to perform his obligations and his duty, *Lenox v. Harrison*, 88 Mo. 491, and cases cited, it will therefore be presumed that Mrs. Miller properly acquitted herself of her obligations and her duty in regard to her daughter Elizabeth.

Another view conduces to the same result, and that is there is sufficient evidence in this record that the husband Miller, in this instance, waived whatever marital rights he may have had over his wife's personal property by permitting her to buy and sell and deal as she would with what had originally belonged to her and its increase. And this waiver a husband may make, as shown by the following authorities. *Botts v. Gooch*, 97 Mo. 88; *White v. Clasby*, 101 Mo. 162; *Roberts v. Walker*, *Ib.* 597; Abbott, Tr. Ev. 171; 1 Cord, Mar. Wom. [2 Ed.], secs. 380, 383, 384.

And if the land in litigation was indeed the property of the wife though through machinations of Miller she only had an equitable estate therein, he as

against her or her legal representatives, could maintain no claim for compensation for improvements made thereon. 2 Bishop, Mar. Wom., sec. 300; 14 Am. and Eng. Ency. of Law, 579, *et seq.; O'Brien v. Joyce,* 117 Mass. 360.

Nor does the statute of limitations constitute a bar in this case. This proceeding was instituted in 1893, the wife having died, as before stated, in 1885. Both husband and wife occupied the premises together; there was no adverse possession and consequently the statute could not run, and the declarations of John Miller made from time to time show that he did not claim adversely to his wife.

Holding these views, we affirm the decree. All concur.