HARRISON MACHINE WORKS, Appellant, v. BOWERS.

Division One, December 22, 1906.

1. **TAX DEED:** Assessment Against Record Owner. A tax deed in pursuance to a judgment against one who had once owned the land and sold it, the deed being recorded at the time of the judgment and sale, is void. Such person is not the owner, apparent or actual.

2. ——: ——: Record of Deed After Judgment. If an unrecorded deed from the apparent record owner to a bona-fide grantee be put of record after a judgment against such apparent record owner, but before sale under execution issued on

that judgment, the grantee in such deed will hold the land as against the purchaser at such sale; but he will not hold the title if such deed be recorded after the execution sale.

3. ———: ———: **Judgment after Record.** Where, after tax suit begun against certain parties alleged to be owners, the real owner, not a party, places his deed of record, a judgment thereafter, against the one who was apparent record owner at the filing of the suit who voluntarily enters his appearance after the real owner has recorded his deed, and a sale under such judgment, do not affect the title of the real owner.

4. ———: **Quieting Title: Perfect Title: Common Source.** Where there is a common source of title agreed to, or where the evidence shows a reliance upon a common source by both parties, plaintiff need not go back of the common source to make his case. And this rule should be applied to suits to quiet title, under section 650, Revised Statutes 1899, as well as to ejectments. And applying this rule to this case, it is held that plaintiff is entitled to recover, however defective may be his title prior to a certain judgment and sale for taxes, if both he and defendant claim through the purchaser at that sale, and plaintiff is shown to have acquired the title of that purchaser.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED (*with directions*).

*M. T. January* for appellant.

(1) The fact that the deed from Lewis M. Clark to John H. Clark was acknowledged before a justice of the peace in Livingston county did not impair its effect as notice, having been recorded in 1867. Secs. 3118, 3119, R. S. 1899; Williams v. Butterfield, 182 Mo. 181; Geer v. Lumber & Mining Co., 134 Mo. 94; Bank v. Corandel, 150 Mo. 570. (2) All irregularities in the assessment of taxes are concluded by the tax judgment and can not be inquired into in a collateral proceeding. Warren v. Manwarring, 173 Mo. 21; Stevenson v. Black,

168 Mo. 549; Lovitt v. Russell, 138 Mo. 474; State ex rel. v. Hunter, 98 Mo. 386; Allen v. Ray, 96 Mo. 542; Jones v. Driskell, 94 Mo. 190. (3) Because land was sold in a body instead of by smallest subdivisions will not authorize a collateral attack on the sale. Yeaman v. Lepp, 167 Mo. 61. (4) The description of land in the order of publication and judgment in tax sale of 1888 against Elinor F. Wells was sufficient. State ex rel. v. Vaile, 122 Mo. 33; Auditor-General v. Sparrow, 116 Mich. 586; R. S. 1899, sec 9328; Chestnut v. Harris, 43 S. W. 977. (5) Defendant is estopped to deny the title of the common source unless he can trace back to the true owner. Smith v. Lindsey, 89 Mo. 76; Grandy v. Casey, 93 Mo. 595; Gage v. Cantwell, 91 S. W. 119. (6) A suit for taxes is properly brought against the record owner, or the real owner. If against neither, title will not pass by sale under the judgment. Vance v. Corrigan, 78 Mo. 94; Allen v. Ray, 96 Mo. 542. (7) A suit is not begun against a party until he is made a defendant. Jaicks v. Sullivan, 128 Mo. 177; Smith v. Barrett, 41 Mo. App. 460.

*A. E. McGlashan* for respondent.

(1) Lucy T. Collier acquired the title to this land by her purchase at the tax sale of 1879. Lewis M. Clark was the apparent record owner. (2) The tax deed to W. R. Shuck for the taxes of 1886 is absolutely void and conveyed no title: (a) Because the land described in the sheriff's deed was not the same land described in the order of publication. Stewart v. Allison, 150 Mo. 344; Winningham v. Trueblood, 149 Mo. 575. (b) Because there was no adequate description of the land in the order of publication. (c) Because there was no adequate description of the land in the judgment. (d) Because the order of publication, the judgment and the sheriff's deed each described different land. (e) Because the tax attorney, W. R.

Shuck, was the purchaser at the tax sale. (f) Because the assessment book on which the tax for 1886 was levied was not certified to at all by the assessor. (g) Because the defendant Elinor F. Wells was a resident of the State, as shown by the deed record. Payne v. Lott, 90 Mo. 676. (h) Because Elinor F. Wells was not notified before the sale of her land, as provided by section 3199, Revised Statutes 1899. (i) Because there is no statement in the order of publication that defendants are non-residents of the State. (j) Because the tax judgment was only for $6, while the execution and sheriff's deed show judgment for $6.59. (k) Because the land was sold in bulk, not having first been offered in 40-acre subdivisions. Roth v. Gabbert, 123 Mo. 30; Yeaman v. Lepp, 167 Mo. 61. (3) Under the maxim, "*expressio unius*," only such letters can be used in tax proceedings as is provided in section 9328, Revised Statutes 1899, and when so used as provided in said section, they will still be insufficient unless the land is so described that it can be identified and located. Lowe v. Ekey, 82 Mo. 286. (4) There was no evidence to prove that it was common usage to describe the land as described in the order of publication, or to show that it could be identified and located by such description. (5) When constructive service is had in lieu of personal, there must be a strict compliance with the statute to bring defendant into court and give the court jurisdiction of the subject-matter. Wade on Notice (2 Ed.), 1030; Charles v. Morrow, 99 Mo. 638; Harness v. Cravens, 126 Mo. 588. (6) The tax attorney, W. R. Shuck, is chargeable with all precedent irregularities, whether he was aware of them or not. Hence, his sheriff's deed was void. 2 Freeman on Executions (2 Ed.), sec. 340; Harness v. Cravens, 146 Mo. 259. (7) There is no common source of title. Plaintiff has no title. (8) Defendant can attack plaintiff's title, and if he proves it invalid, the plaintiff is not entitled

to a decree.  Gage v. Cantwell, 191 Mo. 699; Graton
v. Land Co., 189 Mo. 322; Wheeler v. Reynolds, 193 Mo.
279.

LAMM, J.—This is a suit to ascertain, determine
and quiet title under section 650, Revised Statutes 1899,
in and to the south half of section 9, township 31, range
7, in Texas county.  Plaintiff claims ownership and ti-
tle (tracing its title back to the government), and avers
that defendant makes a claim adverse to its estate,
based on a sheriff's deed executed on a sale of said
lands for taxes, at which one Dooley became the pur-
chaser—defendant holding under *mesne* conveyances
from said Dooley.

The answer was a general denial.

The finding was that plaintiff had no title to the
land, and it was adjudged that plaintiff take nothing,
that defendant go hence without day and recover his
costs, etc.

From that judgment plaintiff appealed.

It will simplify the case to say that both parties
litigant introduced a chain of title and stood on dry,
paper titles—purporting to deal with the fee, there
being no contingent, reversionary or equitable interests
involved and no possession under color of title, or oth-
erwise, in either party — the land being wild and unin-
closed, as we understand it.

Plaintiff, to sustain the issues on its part, intro-
duced the following muniments of title:

1.  A platbook of original entries showing the land
entered by Erastus Day in 1859.

2.  A deed from Erastus Day to Lewis M. Clark,
dated February 31 (?) 1859, recorded October 30, 1866.

Plaintiff offered the record of this deed, and de-
fendant objected for the reason it was "not the best
evidence."

Thereupon plaintiff (to account for the absence of
the original deed) read the deposition of Cyrus Thom-

son, president of plaintiff, who said plaintiff sold farm machinery to one John Hinkle and took notes in payment, secured by a deed of trust on the land in question; that plaintiff had the deed of trust until November 15, 1891, when it was sent to one Leavitt at Houston, Missouri, to foreclose, because the notes were unpaid; that at such foreclosure the property was bought in by plaintiff and a trustee's deed executed, which was filed for record in the office of the recorder of deeds of Texas county and there remained until December 14, 1903, at which time it came into possession of Mr. January, plaintiff's attorney at Nevada, Missouri; that plaintiff never had possession of said trustee's deed, nor of said trust deed since it was sent to Mr. Leavitt, and never had possession of any title deeds to the land in controversy and witness knows nothing of the whereabouts of said deeds, and says it is not in plaintiff's power to produce any of them. On the production of this testimony, defendant's objection to the record of the deed from Day to Clark was overruled.

3. A warranty deed from Lewis M. Clark and wife to John H. Clark, dated April 2, 1867, and recorded May 20, 1867.

This deed narrates that grantors and grantee reside in Livingston county, Missouri, and the acknowledgment was taken in that county before one Eli Hannah, a justice of the peace there. Defendant objected to this deed for the following reasons: because it was not acknowledged by a notary authorized to take acknowledgments in Texas county; and because it was acknowledged before a justice of the peace of Livingston county who had no authority to take acknowledgments of deeds to Texas county lands. These objections were overruled.

4. A warranty deed from John H. Clark and wife to Elinor F. Wells, dated April 17, 1879, and recorded April 25, 1879.

5.   A sheriff's deed from McBride, sheriff of Texas county, selling the interests of Elinor F. Wells, Rexford Wells, Ashford H. Stone, J. Sherman, W. R. Shuck, and S. M. Hubbard in the land, under a tax judgment dated May 30, 1888, for the taxes of the year 1886, to W. R. Shuck—said deed dated November 21, 1888, and recorded December 5, 1888.

To this deed, defendant interposed the objection that the land was sold in bulk and not by subdivisions; that the assessment upon which the tax was based was void; that the judgment upon which the deed was based was void in not describing the land in question; and that Wells had no title at the time of the sale.   This objection was overruled.

6.   A quitclaim deed from W. R. Shuck to Spencer M. Hubbard, dated December 27, 1888, and recorded December 28, 1888.

This deed was objected to by defendant for the reason Shuck had no title; and the objection was overruled.

7.   A warranty deed from Spencer M. Hubbard and wife to John W. Hinkle, dated December 10, 1889, and recorded May 4, 1891.

Defendant objected to this deed for the reason Shuck had no title, which objection was overruled.

8.   A trust deed, with power of sale in the sheriff on failure or refusal of the trustee named to act, from John W. Hinkle and wife to G. W. Rhey, trustee for plaintiff, dated May 4, 1891, and recorded May 5, 1891.

The abstract states that "this deed was a trust deed in usual form." It says nothing about the acknowledgment.   Defendant objected to the deed and gave as his reason that "it is not a deed under sale and was not such an instrument as should have been admitted to record," and upon the further ground that the "parties before whom the deed was acknowledged

had no seal." This objection was by the court overruled.

9. A trustee's deed from said Hinkle and wife, by A. J. Snelson, sheriff and trustee, to plaintiff, dated January 20 1892, and recorded January 23, 1892.

This deed was in usual form and recited that the trustee refused to act. Defendant objected to the deed for the reason it conveyed no title, which objection was overruled.

Plaintiff then offered to prove by one Young, who had lived in Texas county for fifty years, that the land in controversy was wild land, and that plaintiff had paid the taxes on it every year from 1891 to the time of suit, which offer was rejected by the court and plaintiff duly excepted at the time.

This was plaintiff's case in chief—all said deeds purporting to convey the land in controversy.

When plaintiff closed in chief, defendant demurred. His demurrer being overruled, he next proceeded to deliver an attack upon plaintiff's title, and, following that, to produce his own. Said attack was on conveyance No. 5 in plaintiff's chain. To overturn that deed, defendant produced the original files in the tax suit and offered in evidence the order of publication against Elinor F. Wells, Rexford Wells, Ashford A. Stone, T. J. and J. Sherman. The bill of exceptions makes a call on the clerk to copy the original order of publication "as the same appears on the record, making a *fac simile* copy of the description of lands as written and give to the attorneys for plaintiff and defendant an exact copy of the description as he inserts it in the transcript." This peculiar order seems to have been caused by the inability of counsel to agree upon the record in that particular. There is no transcript here from the clerk—the case having been brought up on a short record. When plaintiff's counsel came to abstract the record, he gave the description of the real

estate in this form: "the south one-half of section 9, township 31, range 7." Respondent files a counter abstract in which the description is as follows: "The I. V. of section 9, township 31, range 7." Both parties (apparently) confidently appeal to the original record to sustain their respective renderings of the land description; but both parties (out of abundance of caution, maybe) abstain from producing that original record, or a *fac simile* of the same here. It will not be necessary to reproduce the order of publication—the foregoing sufficiently showing the point to defendant's contention.

Defendant next produced the original judgment in said tax proceeding, and this for the purpose of showing an error of land description. There was a call in the bill of exceptions for a *fac simile* copy of this description by the clerk, for the same reason heretofore indicated, but no *fac simile* is here. Plaintiff gives his rendering of the description as follows: "the S-2 Section nine (9), Township thirty-one (31) Range seven (7)," etc.—Defendant his, as follows: "the S.·2, section nine (9), Township thirty one (31), Range seven (7)," etc.

At this point defendant renewed his demurrer to the testimony of plaintiff, and the same was again overruled.

Defendant now offered in evidence the land assessment book for the tax of the year 1886. This book was not certified as required by law; and this evidence was intended as a further attack on the sheriff's deed at No. 5 of plaintiff's chain of title. Plaintiff objected to the assessment book for the reason that "all these matters were merged into the judgment." The objection was overruled and plaintiff excepted.

Defendant then introduced the following alleged paper title (all deeds following, covering the land in dispute):

a.  The record of a sheriff's deed conveying the interest of Lewis M. Clark to Lucy T. Collier.  The date and the record of this deed are not given, but both must have been subsequent to November 21, 1879, since the deed is based on a judgment for back taxes rendered on that date by the circuit court of Texas county.

Plaintiff objected to this deed for the reason that Lewis M. Clark had parted with his title in 1867.  (See No. 3 in plaintiff's chain of title.)  This objection was overruled and plaintiff excepted at the time.

b.  Defendant next produced the record of a sheriff's deed conveying the interests of Lucy T. Collier, W. R. Shuck and Spencer M. Hubbard to Clark Dooley.  The date of this deed and the date of its record are not shown, but both must have been subsequent to May 26, 1891, because the deed is based on a judgment of that date for delinquent taxes.

c.  The defendant next produced in evidence the record of a quitclaim deed from Clark Dooley to J. E. Organ, dated April 5, 1894, and recorded November 10, 1897.  ·

d.  Defendant next produced in evidence the record of a warranty deed from J. E. Organ and wife to H. A. Dalby and B. J. Laucamp, dated July 3, 1901, and recorded July 22nd of the same year.

e.  Defendant next produced in evidence a deed from said Dalby and wife and Laucamp and wife to defendant, dated the 10th day of April, 1903, and recorded at a date not shown.

Defendant here rested.

In rebuttal plaintiff's counsel introduced evidence tending to parry the force and effect of conveyance "b" in defendant's chain of title.  To this end, he introduced the files and judgment in the tax suit leading up to that conveyance.  Suffice it to say of this evidence that it tended to show the collector of Texas county on January 31, 1891, filed a suit against Lucy T. Collier

and W. R. Shuck to recover delinquent taxes for the year 1888 on the land in controversy—said suit being returnable to the May term, 1891, of the Texas Circuit Court. Summons issued to the sheriff of Texas county, and was served on Lucy T. Collier. The suit was based on a back tax bill naming Lucy T. Collier and W. R. Shuck as owners and dated June 9, 1890. Said May term commenced on the third Monday of May. [R. S. 1889, sec. 3380.] On the 26th day of May, 1891, S. M. Hubbard and W. R. Shuck came into open court and waived summons and, as we understand it, entered their appearance—the judge's docket showing thus: "Appearance of S. M. Hubbard entered;" and the judgment of that date reciting that Shuck and Hubbard "comes [*sic*] into open court and waives [*sic*] summons." The special execution, following, recites this judgment, was returnable to the November term of said court, 1891, and was executed by a levy on the 6th day of October, 1891. A sale followed and, following that, the execution and acknowledgment of a sheriff's deed to Clark Dooley as purchaser on the 26th day of November, 1891, he acquiring the right and title of Lucy T. Collier, Shuck and Hubbard.

Defendant objected to the foregoing files, and judgment, and the objection was overruled.

This was all the testimony, and on this record defendant asked the court to find the issues for him, which request the court denied.

Plaintiff then asked the court for two instructions, viz: First, that under the law and the evidence the finding and judgment should be for plaintiff; second, that the tax sale of 1888, under a judgment for taxes against Elinor F. Wells and others, is not so void as to be subject to collateral attack. These instructions were refused and plaintiff excepted.

Thereupon the court entered judgment as heretofore set forth—the construction put thereon by defend-

ant's learned counsel being this: "The court held that neither the appellant nor respondent had established any title, legal or equitable, and dismissed the petition of appellant and rendered judgment against him in favor of respondent for costs only."

I.  If the judgment of the trial court is susceptible of the construction put upon it by defendant's learned counsel, in that it is a holding that defendant established no title, legal or equitable (a construction we shall assume is correct without deciding it to be so), then the judgment is right so far.  Because:

(1)  The sheriff's deed, in defendant's chain of title at "a," purporting to convey the interest of Lewis M. Clark to Lucy T. Collier under a judgment of November 21, 1879, for back taxes is worthless, since the record shows that Lewis M. Clark and his wife parted with their title to John H. Clark by a deed dated April 2, 1867, recorded May 20th of that year.  (See No. 3 in plaintiff's chain of title.)

(2)  The same is true of the sheriff's deed at "b," purporting to convey the interests of Lucy T. Collier, W. R. Shuck and Spencer M. Hubbard to Clark Dooley, grantee.  It will be observed that it is under this sheriff's deed and *mesne* conveyances from Dooley that defendant sought to deraign title.  Now, Lucy T. Collier relied for her title on the deed held worthless in the foregoing paragraph.  Hence, she had none.  Whatever title Shuck had, he got under the sheriff's deed at No. 5 in plaintiff's chain of title.  Whatever interest he got under that deed he conveyed to Spencer M. Hubbard on December 27, 1888, by the quit-claim deed (recorded the day after) referred to in No. 6 of plaintiff's chain of title.  Therefore, Shuck was not owner (apparent or actual) at the date of the tax suit in question.  But, by reference to the warranty deed at No. 7 of plaintiff's chain of title, it will be seen that Spencer M. Hubbard conveyed the interest he acquired from

Shuck to John W. Hinkle on December 10, 1889—Hinkle, however, did not record his deed until May 4, 1891.

The failure of Hinkle to put his deed of record left Hubbard the apparent record owner during the *interim* and if a suit for back taxes had been instituted against Hubbard while the record was in that fix, and such suit had ripened into a valid judgment, sale and sheriff's deed, it would have passed title to the purchaser and cut away Hinkle's title—at least this would have been the result if the purchaser at that sale had bought without notice that the apparent or record owner was not the actual owner. [Vance v. Corrigan, 78 Mo. 94; Stuart v. Ramsey, 196 Mo. 404; Lucas v. Land & Cattle Co., 186 Mo. l. c. 456, and cases cited; Wilcox v. Phillips, 199 Mo. 288.]

If an unrecorded deed from the apparent record owner of land to a *bona fide* grantee be put of record after a judgment against such apparent record owner but before a sale under execution issued on that judgment, the grantee in such deed will hold the land as against the purchaser at such sale; but it is not so if such deed be recorded after the execution sale. See, Davis v. Owenby, 14 Mo. 170, and a long current of authority flowing from that leading case.

Like reason makes like law. Hence, the foregoing proposition has been applied where an attachment was levied on land standing in the name of the defendant in the attachment suit. It has been held that if such defendant part with his title to a *bona fide* purchaser by executing a deed, which such purchaser had failed to record before the levy of the attachment but which he records prior to a sale under the attachment proceedings, he would hold the land against the purchaser at such sheriff's sale. [Hannah v. Davis, 112 Mo. l. c. 607; Hope v. Blair, 105 Mo. l. c. 95.]

The foregoing cases but promulgate the spirit and substance of the statutes of this State. For instance,

section 923, Revised Statutes 1899, provides that "Every instrument in writing that conveys any real estate, or whereby any real estate may be affected, in law or equity, proved or acknowledged and certified in the manner hereinbefore prescribed, shall be recorded in the office of the recorder of the county in which such real estate is situated." The next section is as follows: "Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice." And the next section reads as follows: "No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record."

The principles of law giving a sheriff's deed upon a tax judgment and sale precedence over an unrecorded deed from the apparent record owner are but the principles announced in the foregoing statutes and the foregoing cases. The leading case on the effect of a tax deed borrows and uses the same principles applicable to an unrecorded deed from the apparent record owner in cases arising on sheriff's sales on ordinary judgments. [Vance v. Corrigan, 78 Mo. *supra*.] And it has been held in a very late case (Stuart v. Ramsey, 196 Mo. *supra*), that if the execution purchaser under a tax sale had notice of an unrecorded deed, then, his title acquired at the tax sale was inferior to that of the grantee in such unrecorded deed. The same doctrine was recognized (*arguendo*) in Allen v. Ray, 96 Mo. 542, and in Vance v. Corrigan, *supra*.

Reasoning from analogy, it would seem that, after the record of a hitherto unrecorded deed, which record antedated a sale under execution for taxes, the pur-

chaser at such sale must take notice of the record and (having notice of the real *status* of the title) would not acquire the title of the grantee in such deed.

But is is not necessary for us to decide that question in this case, and we suggest it, but leave it open. The case at bar is this: A suit was instituted against Shuck and Collier in January, 1891. Neither Shuck nor Collier were real owners; nor were they apparent or record owners at the institution of that suit. The apparent record owner was Hubbard; the real owner was Hinkle. On the 4th day of May, 1891, Hinkle placed his deed of record; and, *after that record,* Hubbard entered his voluntary appearance to the tax suit as apparent record owner, to-wit, on May 26th, and judgment went against him. The trouble with Dooley's deed is that, at the time Hubbard entered his appearance, he, Hubbard, was no longer the apparent record owner —ownership (apparent and real, record and actual) had merged in one man and that, Hinkle.

It is not necessary to comment on the suggestive condition of things presented by this record. That Hubbard should enter his appearance in a tax suit for the purpose of destroying the title he knew he had passed from him by a *bona fide* deed to Hinkle, provokes and would bear comment, but a cold statement of the facts is all that is necessary for the application of the law.

The instant Hubbard entered his appearance, that event was (in effect) the commencement of the tax suit against the apparent record owner at the time the petition was filed. All prior steps in that suit were but idle and meaningless ceremony, mere *opera bouffe* in the eye of the law. The same record that was open to the officers who prosecuted tax suits in Texas county and to the purchasers at tax sales and which showed Hubbard the apparent record owner at the time the petition was filed, showed Hinkle such owner on May 26th, when

Hubbard was made a party. Hinkle then should have been made a party instead of Hubbard, under Revised Statutes 1899, section 9303, which provides that "all actions commenced under the provisions this chapter [the chapter on revenue] shall be prosecuted . . . *against the owner of the property,"* etc.

Based on the foregoing views, we hold that conveyance "b" in defendant's chain of title conveyed nothing to the purchaser, Dooley; Dooley conveyed nothing to Organ; Organ nothing to Dalby and Laucamp; and Dalby and Laucamp, nothing to defendant. Out of nothing, nothing can come. Defendant, therefore, had no title and the case may proceed on that theory.

II.  It is a favorite rule applied in trying land titles that plaintiff must rely upon the strength of his own, and not upon the weakness of his adversary's title. There is, however, a main exception to the foregoing rule, having its origin, as some authors contend, in convenience and justice, and, as others contend, in an admission, concession or acknowledgment (akin to estoppel); and that exception may be stated in this way: where there is a common source of title agreed to, or where the evidence shows a reliance upon a common source of title by both parties litigant, then the rule that plaintiff must recover, if at all, on the strength of his own title is departed from and he need not go back of the common source of title in making his case.

Sedgwick & Wait formulate the general doctrine (Sedgwick & Wait on Trial of Title to Land (2 Ed.), sec. 803), as follows: "Both at law and in equity the plaintiff must recover upon the strength of his own title, but this does not mean that he must show a good title against all the world. It is enough that he shows a right to recover against the defendant. Thus, whenever plaintiff and defendant both derive title from the same source, the plaintiff usually need not go behind this source to prove his title. Some doubt exists as to

how far this rule extends. It is obviously sufficient, in order to make a *prima facie* case, to prove derivation of title from the common source; but it may be essential to go behind the common source. Hence, it is held that the rule is not strictly an estoppel, though often spoken of as such, but a rule of justice and convenience adopted by the courts to relieve the plaintiff from the necessity of going behind the common source. Where the defendant can show a better title outstanding, and has acquired it, the rule ceases to apply. When the defendant is allowed to impeach the common source of title he must establish that he himself has acquired a superior title, and except to this extent he is not permitted to invoke the rule that the defendant can defeat the plaintiff by showing a better title in a third person. . . ."

It has been steadily held in Missouri that where there is an agreement on the common source of title, or both parties assume a common source, or where the evidence proves a common source, then (subject to exceptions absent here) the plaintiff need not go back of such common source in making his case. [Brown v. Brown, 45 Mo. 412; Fellows v. Wise, 49 Mo. 350; Butcher v. Rogers, 60 Mo. 138; Miller v. Hardin, 64 Mo. 545; Smith v. Lindsey, 89 Mo. 76; Finch v. Ullman, 105 Mo. l. c. 263; Worley v. Hicks, 161 Mo. l. c. 348.]

A necessary corollary of the rule under consideration is that where there is a common source of title agreed to, assumed, or shown to exist, and relied on, then irregularities in conveyances prior to the common source become weaknesses common to both litigants, and, hence, are immaterial. [Ebersole v. Rankin, 102 Mo. l. c. 498-9.]

The class of cases in which this rule is usually applied are ejectment suits; but when it is considered that title is being tried out in an ejectment suit, and when it is considered that title is also on trial in the *quasi*-equitable proceeding to determine and quiet title, based

on section 650, *supra,* it would seem, by parity of reasoning, that the rule should be applied in cases arising under section 650, and so it has been held. [Graton v. Land & Lumber Co., 189 Mo. 322; Gage v. Cantwell, 191 Mo. 698.]

Proceeding one step further, it will be seen that this court is arriving at the proper construction of section 650, *supra,* as cases arise, by a process of guarded inclusion and exclusion. The notion has been entertained that a suit under that section to determine and quiet title is a proceeding to settle the title as against the whole world—in effect, a proceeding *in rem.* That notion is exploded. In Graton v. Land Co., supra, GANTT, J., says for this court: "The statute does not require that the plaintiff shall establish an indefeasible title against the whole world. The statute does not authorize a proceeding which would make the decree operate as a judgment *in rem.* By its terms no right or title can be litigated save and except such as may be asserted by the plaintiff and the defendant *respectively* and a decree under the statute would not be binding against strangers to the title and party to the suit." Gage v. Cantwell, 191 Mo. *supra,* proceeds upon the same theory.

Applying the principles of law thus established to the case at bar, it sufficiently appears that plaintiff and defendant rely on a common source of title, that is, the title of Hubbard; and his title must be referred back to the sheriff's deed at No. 5 in plaintiff's chain of title, because Shuck got title there and he conveyed to Hubbard. Hence, defendant's assault upon No. 5, however well directed as an abstract proposition, must be held of no effect in the concrete case before us. It is but muddying the springs of justice to consider whether or not a justice of the peace of Livingston county could take acknowledgments to deeds conveying land in Texas county, as urged at by defendant against No. 3 in plain-

tiff's chain of title; and the same may be said of defendant's contention that the assessor's book was not duly certified for that year 1886, that the whole half section was sold *en bloc,* and that the order of publication and judgment did not properly describe the land conveyed to Shuck at No. 5 of plaintiff's chain of title.   [The case of Stewart v. Lead Belt Land Co., 200 Mo. 281 is easily distinguishable from the case at bar.]

If said conveyance at No. 5 in plaintiff's chain is unassailable by defendant, as we have just held, then it follows that, as between plaintiff and defendant, the judgment below was for the wrong party.   Under the Graton case and the Gage case, the issue here was between the litigants to the suit; and the court should have decreed the elder and better title to be in plaintiff, unless plaintiff's later deeds were irregular and void.   We find the contrary to be true.

Accordingly, the cause is reversed and remanded with directions to the lower court to enter judgment in favor of plaintiff and against defendant—costs below to follow that judgment.

All concur.