John S. WHITE, Augusta Bigham, Anna B. Grinstead, James Edgar Bigham, John Paul Bigham, Mayme Petty, Anita Essary, Hina Webb, and Carl M. Webb, Jr., Respondents,

v.

Floyd C. WILKS, Administrator of the Estate of Mary Agnes Swinney Pate, deceased, and Floyd C. Wilks, Administrator of the Estate of Stephen S. Pate, deceased, and Charles Albert Faris, Vista Wayne Ford, Vernon Pate, Vera West, Emerson LaFayette Pate, Eldridge Malcolm Pate, Elsie Virginia Newton, Clara Jordan, Clarence Pate, Meredith S. Pate, Stephen S. Pate, Mary Sue Shafer, Hattie Blanche Davis, Reba Williams, Ruth Dowrey, Charles J. Pate, Harold M. Pate, Martha F. McQuinn, James A. Pate, Delores L. Gustin, Stevie John Pate, Rudolph V. Pate, Wanda Jean Pratt and Donald Michael Pate, a Minor, Appellants.

No. 49011.

Supreme Court of Missouri,

Division No. 2.

May 14, 1962.

Opinion Modified on Court's Own Motion and Rehearing Denied June 11, 1962.

**910**

Sharon J. Pate, Caruthersville, for appellants.

Ward & Reeves, Caruthersville, for respondents.

EAGER, Presiding Judge.

Count One of the petition in this suit is an action to ascertain and determine title to forty acres of land in Pemiscot County. Plaintiffs are the heirs of J. M. Bigham who died about 1907. Defendants, except for the administrator and a tenant who were included as more or less nominal parties, are the heirs of Stephen S. Pate; he derived whatever interest he may have had by will from his wife, Mary Agnes Swinney Pate, a daughter of Bigham. A second count was laid in ejectment, a third sought partition between the plaintiffs, and a fourth was for the recovery of certain taxes. The fourth count was dismissed by plaintiffs and is of no further moment. By amended answer the defendants denied the title of plaintiffs and of J. M. Bigham and alleged that Bigham never had title; they further alleged that fee simple title was vested in Mary Agnes Swinney Pate by adverse possession for more than thirty-one years prior to her death; and defendants prayed affirmatively that fee simple title be found and adjudged in them.

A jury was waived. The court found the issues generally for plaintiffs on Counts 1, 2 and 3, adjudged that they were the owners in fee simple and that they should recover possession and certain rents; it also entered an interlocutory decree in partition. Defendants appealed, after the automatic overruling of their motion for a new trial.

Plaintiffs offered in evidence a warranty deed dated June 14, 1902, from J. M. Bigham and his second wife, Maud E., in which they purported to convey the land in question to Mary Agnes Swinney (later Pate) "to have and to hold" unto said grantee "and unto her bodily heirs only forever * * *." This deed was duly recorded. Mary (and for brevity we shall so refer to her) went into possession soon after the date of that deed and remained in possession until her death on January 13, 1959, a period of well over fifty years. She left no bodily heirs. By her will, duly probated, all of her property (with exceptions not material here) was bequeathed and devised to her husband, Stephen S. Pate, who survived her but died in September 1959. By oral testimony it was shown that J. M. Bigham left six children, including Mary; one of these, Nora, was a child by his second wife. His first wife was Margaret Eastwood Bigham; the date of her death was not shown, but it was obviously prior to 1902. The will of J. M. Bigham, dated January 23, 1907, made no specific reference to the land in controversy, but directed that all his real estate be sold and the proceeds divided among his wife and his children; however, the testator further did "give and bequeath" all his real estate, subject to debts, to his wife and children in equal undivided interests.

Defendants offered in evidence two deeds which, considered together, purported to convey the land in controversy; that is to say, each deed conveyed a part of it. The first was a warranty deed from John Cotton and Julia Cotton, his wife, dated November 2, 1888, to Margaret E. Bigham and to *his* heirs and assigns forever; that deed was duly recorded. The second was an executor's deed from James D. Tinsley, Executor of James Eastwood, deceased, to Margaret E. Bigham and her

heirs, forever, reciting authority from the probate court to sell for the purpose of paying debts; that deed was dated September 24, 1889, and was duly recorded. By these deeds defendants sought to establish title in Margaret, the first wife of J. M. Bigham. It was admitted, as already stated, that Mary was in possession of the land after 1902; also that she had paid all taxes except those for the last two years prior to her death.

In rebuttal plaintiffs produced several witnesses who testified, in one form or another and over repeated objections, that Mary had stated on various and sundry occasions that she only had a lifetime interest in the forty acres in question and could not sell it; and that it would then go to the "Bigham heirs," or the "other heirs," or, as one or two said, "to her heirs." The preponderance of this testimony fairly indicated that she had stated that at her death the land would go to the "Bigham heirs." Plaintiffs also showed that no will of Margaret E. Bigham could be found in the probate records.

Defendants' counsel submits here the following points, without elaboration or substantial argument: that plaintiffs wholly failed to prove that J. M. Bigham (and his second wife) had any title, and that none could therefore revert to his heirs; that the two deeds offered by defendants showed title in Margaret E. Bigham, the mother of Mary, who died without administration on her estate; that plaintiffs must prevail, if at all, on the strength of their own title, and that they failed to prove any title in them; and, finally, that Mary acquired title by adverse possession for a period exceeding fifty years. Plaintiffs, seeking to uphold the judgment, say: that no title was shown in either of the two grantors who conveyed to Margaret E. Bigham, that possession by her was not shown nor was any conveyance from her shown, and that the deeds were incompetent; that Mary went into possession under her "bodily heirs" deed, which was

her sole source of title; that she could not claim the land by inheritance because Bigham left five other children, against whom she could not claim title by adverse possession; that it was not shown that Mary ever claimed a fee simple title, or claimed adversely; that upon the death of Mary the title reverted to the J. M. Bigham heirs; that plaintiffs established a "common source of title" and could rely upon the strength of their own title under the oft-stated rule, since Mary took possession under the "bodily heirs" deed from her father, and recognized that deed, with its conditions, as her only source of title; and, finally, that Mary and those claiming under her are bound by the doctrine of "estoppel by deed."

■ Plaintiffs tried the case and have presented it here on the theory that there was a common source of title in J. M. Bigham, and consequently they have not attempted to prove title in him or in anyone prior to him. In Riley et al. v. O'Kelly et al., 250 Mo. 647, 157 S.W. 566, the court said, loc. cit. 568: "The rule is settled in this state that where the adversary parties in actions to quiet title as well as in actions of ejectment hinge their claims of title to the property in controversy upon that of a common grantor or ancestor, then the court and jury have but one issue to solve, to wit, which of the adversary parties acquired the title under which they respectively claim? And in determining this issue it is sufficient if the record shows that the contending parties proved, admitted, or assumed a common source of title." (Citing cases.) See also Harrison Machine Works v. Bowers, 200 Mo. 219, 98 S.W. 770; Travelers' Insurance Co. v. Beagles, 333 Mo. 568, 62 S.W.2d 800. The theory of these cases is that the "parties litigant" (Harrison, supra) are committed to the common source of title where the record shows that they have relied upon such a title or have agreed upon it. The defendants here neither relied upon nor agreed to the contention of plaintiffs that title was in J. M. Bigham.

They specifically alleged in their pleadings that no title was in Bigham, they objected to the deed from Bigham, and they offered other deeds in an effort to show an independent title in Margaret Bigham. There was no action of the "parties litigant" which established a common source of title. Plaintiffs seem to rely upon the acts of Mary, in her lifetime, as constituting an agreement upon a common source of title, chiefly by her acceptance of the deed from Bigham, her possession thereunder, and her declarations concerning the title. While acts and declarations of an ancestor may have some relevancy on a question of estoppel, they may not serve as a substitute for an agreement, express or implied, of the parties to the litigation. No common source of title was established here, and hence plaintiffs must rely upon, and prove, the strength of their own title. Harrison Machine Works, supra; Cullen v. Johnson, 325 Mo. 253, 29 S.W.2d 39; Baugh v. Grigsby, Mo., 286 S.W.2d 798, 58 A.L.R. 2d 607; Feeler v. Reorganized School District No. 4 of Lincoln County, Mo., 290 S.W.2d 102.

■ There is no doubt that, had title been effectively proved in J. M. Bigham, it would have reverted to his heirs upon the death of Mary without bodily heirs. Davis v. Austin, 348 Mo. 1094, 156 S.W.2d 903; Davidson v. Davidson, 350 Mo. 639, 167 S.W.2d 641; Stockwell v. Stockwell, 262 Mo. 671, 172 S.W. 23; Gillilan v. Gillilan, 278 Mo. 99, 212 S.W. 348.

■ In so far as defendants claim that title was established in them through limitations, we may simply say that no adverse possession, as it is defined in our authorities, was sufficiently proved. It is true that *possession* was agreed to have been in Mary for over fifty years. But proof of title by adverse possession requires much more, and the burden is on those asserting such a title. Allen v. Wiseman, 359 Mo. 1026, 224 S.W.2d 1010; Fisher v. McClard, Mo., 262 S.W.2d 37; Franck Bros., Inc. v. Rose, Mo., 301 S.W.2d 806. In the latter case the court said, loc. cit. 811: " 'In order to establish title by adverse possession plaintiff had the burden of proving that he and those under whom he claims had possession of the land for the statutory period (10 years), and that such possession was (1) actual, (2) hostile, i. e., under claim of right, (3) open and notorious, (4) exclusive, and (5) continuous. City of Kirksville v. Young, Mo.Sup., 252 S.W.2d 286.' Feinstein v. McGuire, Mo.Sup., 297 S.W.2d 513, 515. Whenever any of these elements is lacking no title can ripen by adverse possession.' " The defendants here made no pretense of proving certain of these attributes of adverse possession; indeed, the only evidence concerning the nature of the possession came from the plaintiffs. That evidence indicated rather clearly that Mary was merely claiming to hold for her life and that she was not claiming the fee, in hostility to the heirs of Bigham. At this point, in view of another trial, we hold that her declarations, generally, were admissible, not to establish title in anyone, but as bearing upon the nature and character of her possession. Allen v. Morris, 244 Mo. 357, 148 S.W. 905; Stephens v. Fowlkes, 338 Mo. 527, 92 S.W.2d 617; Boynton v. Miller, 144 Mo. 681, 46 S.W. 754; Minor v. Burton, 228 Mo. 558, 128 S.W. 964. In this instance the statements were also against her interest. Boynton v. Miller, supra; Meier v. Meier, 105 Mo. 411, 16 S.W. 223. The competency of this evidence under the Dead Man's Act is suggested. Section 491.010 RSMo 1959, V.A.M.S. Plaintiffs say that the statute is not applicable to testimony concerning statements of this character. Stoff v. Schuetze, 293 Mo. 635, 240 S.W. 139, 144(2). It is unnecessary to decide that question here. The defendants have not briefed any question of the incompetency of the testimony. The case is being reversed and remanded, and the competency of the evidence may be reconsidered upon another trial, with particular reference to the competency of each witness under the statute. In any event, it is only the testimony of certain witnesses which is barred.

And see generally, Ashley v. Williams, 365 Mo. 286, 281 S.W.2d 875; Fisher v. Cox, Mo., 312 S.W.2d 775; Stoops v. Stoops, Mo., 276 S.W.2d 188.

It thus appears that no record title was established by either plaintiffs or defendants and that no common source of title was agreed upon. Under these circumstances it is unnecessary to consider plaintiffs' point that the two deeds to Margaret were inadmissible, for in any event they were not shown to have established any title in defendants. Nor have defendants prosecuted their case upon the theory that they are the heirs of Margaret, which they evidently are not, although Mary was one of her heirs.

■■■ There remains the contention that Mary and those claiming through or under her are estopped under the doctrine of "estoppel by deed." While there has been some occasional and casual reference to this doctrine in Missouri (Hunt v. Searcy, 167 Mo. 158, 67 S.W. 206, 209; Fox v. Windes, 127 Mo. 502, 30 S.W. 323; Johnson v. Adams, Mo., 7 S.W.2d 1010), it has not been developed to the point where our cases are of any great assistance. By reference to such texts as 19 Am.Jur., Estoppel, § 21, p. 619, § 10 et seq., p. 606 et seq.; 31 C.J.S., Estoppel, § 13, pp. 196–198, § 15, pp. 199–201; and American Law of Property, § 15.18 et seq., we see that the doctrine is more aptly applied to a grantor than to a grantee, and that, generally speaking, if a grantee is estopped to deny the title of his grantor, the estoppel is an equitable one, rather than a strict estoppel by deed. A grantee may be required to claim under the whole of his deed rather than to accept the benefits and reject the burdens; but, as a general rule, a grantee may acquire a superior title or one by limitations. 19 Am. Jur., Estoppel, §§ 23, 24; Macklot v. Dubreuil, 9 Mo. 282 (477). And see the rather full discussions in Robertson et al. v. Pickrell et al., 109 U.S. 608, 3 S.Ct. 407, 27 L.Ed. 1049, and Bybee v. Oregon and California R. R. Co., 139 U.S. 663, 11 S.Ct. 641, 35 L.

Ed. 305. We have determined that the doctrine of estoppel is not properly in issue here. Defendants affirmatively alleged that J. M. Bigham had no title whatever, they asserted title in themselves by limitations, and they prayed a finding and adjudication of fee simple title in them as the heirs of Stephen S. Pate. This, in effect, was a cross-action to determine title. We hold that it required a responsive pleading, whether designated as a reply or otherwise. This has been held necessary in a case applicable here by close analogy. McIntosh v. Foulke, 360 Mo. 481, 228 S.W.2d 757, 759(1). There the court said, loc. cit. 759: "Foulke's answer prays the affirmative relief of an adjudication as absolute owner in fee simple of the land in question, and prays also that the court adjudge that the instant plaintiffs have no right, title or interest therein. Such an answer requires a reply under our statutes." In so far as mere denials would suffice, the necessity for such a pleading might be waived if the parties tried the issues alleged in the cross-action, without objection; but under § 509.090 RSMo 1959, V.A.M.S., estoppel is an affirmative defense; and see Cook v. Daniels, Mo., 306 S.W.2d 573. If plaintiffs wished to rely upon an estoppel they should have filed a pleading containing the appropriate allegations. See also Smyth v. City of St. Joseph, Mo.App., 297 S.W.2d 578, 581; Hill v. Hill, Mo.App., 236 S.W. 2d 394, 398. The purpose of this statutory requirement is not merely technical, but to give notice to the opposing parties in order that they may be prepared on the issue. Upon remand the parties should have leave to reframe their pleadings, if desired.

The judgment is reversed and the cause remanded. Since the judgments on Counts 2 and 3 depend entirely upon the judgment on Count 1, all are set aside. This will afford an opportunity to the parties to develop in a more realistic manner the actual state of the record title. It is so ordered.

All of the Judges concur.