John S. WHITE et al., Respondents,

v.

Floyd C. WILKS, Administrator, et al., Appellants.

No. 51013.

Supreme Court of Missouri, Division No. 2.

June 14, 1965.

Ward & Reeves, Caruthersville, for respondents.

Sharon J. Pate, Caruthersville, for appellants.

BARRETT, Commissioner.

The court has again quieted the title to forty acres of land in Pemiscot County in the respondents, decreed that they are entitled to the rents since January 13, 1959, and has ordered partition. The only question and determinative of all issues that may be involved is the appellants' claim that they are entitled to a one-fifth interest in fee in the property and that the trial court and now this court on appeal should so decree. This is the second trial and appeal of this cause, White v. Wilks, Mo., 357 S.W.2d 908, and there is no substantial change in the basic facts except that it is now tacitly conceded if not irrefutably established that the title to this land was in Margaret E. Bigham prior to her death and prior to the year 1902. Furthermore, and insofar as material here, Margaret and her husband J. M. Bigham had five children, J. A., Paul C., Inez, Myrtle and Mary Agnes Swinney Pate. This controversy is concerned with the interest, in the circumstances of this record, of Mary Agnes, usually known as "Aunt Mamie." As stated Margaret, wife of J. M. Bigham, died prior to the year 1902 and there was no administration upon her estate. On January 14, 1902, J. M. Bigham and his second wife, Maude, by warranty deed conveyed the forty acres to Mary Agnes Swinney Pate (one of the five children of J. M. and Margaret) *"and unto her bodily heirs only."* It is also tacitly agreed if not indisputably established that after the execution of this deed Mary A. S. Pate was in actual

possession of the forty acres or controlled it and rented it to others, collecting the rents and paying the taxes until her death in 1959. Mary A. S. Pate in a joint will devised and bequeathed all her property to her husband, Stephen S. Pate, and it is under this will that the appellants, the "administrator" of Mary's estate and now the "administrator" of Stephen's estate and his descendants claim a one-fifth interest in fee in the forty acres.

To quote one sentence from the appellants' argument, this is the claim and summary statement of their position: "Defendants (Appellants) state that they believe they have shown conclusively that the title to the land involved in this litigation was in Margaret E. Bigham at the time of her death prior to 1902, and since it is admitted that there was not an administration had upon the estate of Margaret E. Bigham, the title to the land had already vested in John Albert Bigham, Paul C. Bigham, Myrtle Bigham Faris, Inez Bigham White and Mary Agnes Swinney Pate, who were the five heirs of Margaret E. Bigham, at the time, January 14, 1902, J. M. Bigham and his SECOND wife" Maude executed the deed, as indicated, to Mary and her bodily heirs. In quoting from the appellants' argument this concluding clause has been omitted "J. M. Bigham and his SECOND wife, perpetrated the colossal fraud upon his own flesh and blood" because there is no evidence of fraud, at least in its conventional sense, and it is not believed that the inference of fraud substantially appears from the mere fact of the conveyance. In any event the respondents' answer to the appellants' claim is that Mary Agnes Swinney Pate took possession and assumed control of the forty acres in 1902 "to the exclusion of all of the other heirs of J. M. Bigham and his wives," collected the rents and profits for more than fifty years, 1902–1959, and therefore it is asserted she and her privies (the appellants) are "estopped to claim any title to this land through Mrs. Pate."

■ The facts are set forth fully and completely in the former opinion, 357 S.W.

2d 908, and it is not necessary to again relate them, it is sufficient to say that among other purposes the judgment was reversed and remanded to the end that "[i]f plaintiffs wished to rely upon an estoppel they should have filed a pleading containing the appropriate allegations." It should be added, however, that the opinion upon the first appeal is now more or less the law of the case. In any event upon remand the respondents by way of reply set forth Mary's possession, collection of "rents, income and benefits" with full knowledge of all the facts and to the exclusion of her brothers and sisters and "by her acts, conduct, declarations and statements made it well known and understood to the other heirs of J. M. Bigham as well as all other persons that she was claiming title to said real estate under the terms and conditions of the bodily heir deed aforesaid and that upon her death said real estate would revert to the other heirs of J. M. Bigham, and that she never at any time asserted an undivided one-fifth interest in fee simple in and to said real estate; that by reason of these facts each and all of the defendants (appellants) herein are es*toped* from making any claim whatever to said real estate or any part thereof." In this connection and as suggested in the former opinion ("her declarations, generally, were admissible, not to establish title in anyone, but as bearing upon the nature and character of her possession") the respondents proved by several witnesses, old-timers and others that Mary A. S. Pate repeatedly said that she could not sell or mortgage the property because her dad "gave her only a lifetime estate and upon her death it would go back to her bodily heirs," or "Our father was smart enough so that he fixed our land so that it would stay with the Bigham heirs."

■ On the former appeal adverse possession and "estoppel by deed" were ruled out but the noted circumstances support a species of estoppel—quasi estoppel, so to speak—based on election, ratification, affirmance, acceptance or principally acceptance of benefits with the consequence that it

is simply unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced for a long period of time, here over fifty years. 31 C.J.S. Estoppel §§ 107, 110(3), pp. 547, 569; 19 Am.Jur. (Estoppel) §§ 21, 64, pp. 619, 682. Support for this doctrine is found in the circumstances and pronouncements in Fox v. Windes, 127 Mo. 502, 30 S.W. 323 and the Mississippi case of Barrier v. Kelly, 82 Miss. 233, 33 So. 974, 62 L.R.A. 421. And there is some analogy in at least one of the will cases, Arrington v. McCluer, 326 Mo. 1011, 34 S.W.2d 67. In the latter case a grantee of property also disposed of by will was put to an election whether she claimed under the deed and electing to take under the will conclusively bound herself and those claiming under her. "It would be unconscionable to permit her attempted retraction by devising the property to plaintiffs, if she so intended such devise, to have effect." 326 Mo. 1. c. 1028, 34 S.W. 2d 1. c. 73. For these indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.