McMURRAY, Appellant, v. McMURRAY et al.

Division One, March 17, 1904.

1. **RESULTING TRUST: Deed to Trustee: Possession: Suit by Heirs.** A father in 1870 conveyed his homestead and his interest in a partnership to a son by a deed absolute on its face, but the son at that time executed a declaration of trust wherein he acknowledged that the property was held in trust for the father for his life and for his wife and his two sons thereafter. Soon afterwards he died and the son collected life insurance for $3,000 in favor of his mother, sold the homestead for $500, and with those two sums and $1,295.50 which he drew out of the firm, and perhaps other money which belonged to the father's estate, purchased the real estate in question, taking the title in his own name, but declaring at the time and many times thereafter by oral declarations and by letters to his mother, that it was purchased with said means as a home for the mother. During the next eleven years he drew out of the firm between twelve and thirteen thousand dollars, and paid to the mother from three to five hundred dollars each year, and thus it appears that upon a just accounting he received and retained more than his share of his father's estate, if the land in suit is held to be the property of the mother. He put the mother in possession of said property and she occupied and claimed it as her own for twenty-eight years and he never was in possession and never claimed to own it at any time. *Held,* that, keeping in view the settled rule that a resulting trust will not be declared unless the evidence is clear, strong, unequivocal and so definite and positive as to leave no room for doubt in the mind of the chancellor, and keeping in mind also the rule of practice that in equity cases proper respect and deference should be given by the appellate court to the finding of the chancellor, these facts establish a resulting trust in the mother, and as by her last will she devised the property to her other son, such son is entitled to a decree vesting the title in him, as against the widow and children of the son named as the grantee in the deed.

2. ——: **Limitations: Knowledge.** Although the suit to establish a resulting trust in real estate may not have been begun for over thirty years after the deed absolute on its face which conveyed the property to the trustee was executed, yet if the beneficiary was put in possession and did not know until within ten years of the institution of the suit that the trustee had taken the title in his own name, and that trustee had during all these years resided outside of this State, the suit is not barred by any of the statutes of limitation.

McMurray v. McMurray.

3. ————: **Statute of Frauds: Application.** The statute of frauds has no application to resulting trusts.

Appeal from Jefferson Circuit Court.—*Hon. Frank R. Dearing,* Judge.

REVERSED AND REMANDED (*with directions*).

*Joseph T. Tatum* for appellant.

(1) Suits to establish resulting trusts have been of frequent occurrence in Missouri and elsewhere. While each case rested upon the view taken of its own particular facts, the principles of decision in the several jurisdictions have been remarkably in unison and well settled. They may be epitomized, as concerns the case at bar, as follows: (a) A resulting trust is said to arise when land is purchased with the money of one, but the title taken in the name of another, where a gift or settlement is not intended. (b) The evidence is required to be clear, positive, unequivocal and convincing, leaving no room for a reasonable doubt as to the facts relied upon. (c) Parol evidence is sufficient to establish the facts, as such trusts are not within the statute of frauds, and in Missouri are expresslly excepted. R. S. 1899, sec. 3417; Truesdell v. Callow, 6 Mo. 605. (d) Admissions and declarations of the one taking the legal title are admissible in evidence, even though he be dead. (e) The *res gestae,* the acts of the parties, the attending facts, the surrounding circumstances, the environments, are all to be considered by the chancellor in weighing the evidence. (f) It is not necessary that the proof should be so strong as to create a certainty, but it is only required that the evidence should so preponderate as to create a reasonable belief that an equitable right exists. The probabilities are to be regarded and given weight. "Probability is the chief corner stone of evidence." The Missouri de-

cisions abundantly establish the above propositions—
not one case to the contrary. Bird v. Ward, 1 Mo. 308;
Truesdell v. Callow, 6 Mo. 605; Richardson v. Robinson,
9 Mo. 810; Depos v. Mayo, 11 Mo. 314; Thompson v.
Renoe, 12 Mo. 157; Paul v. Chouteau, 14 Mo. 580;
Groves' Heirs v. Fulsome, 16 Mo. 543; Valle v. Bryan,
19 Mo. 423; Rankin v. Harper, 23 Mo. 579; Kelly v.
Johnson, 28 Mo. 249; Cloud v. Ivie, 28 Mo. 578; Evans
v. Gibson, 29 Mo. 223; Baumgartner v. Guessfeld, 38
Mo. 36; Jackson v. Quarles, 46 Mo. 423; Forrester v.
Scoville, 51 Mo. 268; Woodford v. Stephens, 51 Mo.
443; Ringo v. Richardson, 53 Mo. 385; Morey v. Staley,
54 Mo. 419; Higgins v. Higgins, 55 Mo. 346; Kennedy
v. Kennedy, 57 Mo. 73; Darrier v. Darrier, 58 Mo. 222;
Sharp v. Berry, 60 Mo. 575; Seibold v. Christman, 75
Mo. 308; Buren v. Buren, 79 Mo. 538; Modrell v. Rid-
dle, 82 Mo. 31; Shaw v. Shaw, 86 Mo. 594; Viers v.
Viers, 75 S. W. 395; Brinkman v. Lunken, 174 Mo. 709;
Johnston v. Johnston, 173 Mo. 91; Crawford v. Jones,
163 Mo. 577; Curtis v. Moore, 162 Mo. 442; Goodman
v. Crowley, 161 Mo. 657; Rice v. Shipley, 159 Mo. 399;
Miller v. Shipsky, 158 Mo. 644; James v. Groff, 157 Mo.
402; Mulock v. Mulock, 156 Mo. 431; Pitts v. Weakly,
155 Mo. 109; Joyce v. Gowney, 154 Mo. 253; Small v.
Hatch, 151 Mo. 300. (2) Plaintiff is not barred by
limitation. R. S. 1899, sec. 4282; Darrier v. Darrier,
58 Mo. 234; Boynton v. Miller, 144 Mo. 681; Buren v.
Buren, 79 Mo. 538. (3) Mrs. Eliza McMurray has not
been guilty of laches. (a) There is no intervention of
third party rights. (b) There is not a scintilla of
evidence that she had actual knowledge of the real con-
dition of the title. Morey v. Staley, 54 Mo. 419; But-
ler v. Lawson, 72 Mo. 249; Johnston v. Johnston, supra;
Condit v. Maxwell, 142 Mo. 266; Buren v. Buren, supra;
Boynton v. Miller, supra; Perry on Trusts, sec. 141;

Lindell Co. v. Lindell, 142 Mo. 61; Life Assn. v. Liddal, 3 De G. F. & J. 74.

*Byrns & Bean* with *C. J. Buchanan* for respondents.

(1)   The rule in this State, as to resulting trusts, is that the evidence of such trust must be clear, strong and unequivocal, and so definite and positive as to leave no room for doubt in the mind of the chancellor.   Burdett v. May, 100 Mo. 13; Curd v. Brown, 148 Mo. 92. The competent evidence in this case falls far short of that standard.   When the incompetent testimony has been sifted out of this record there is little left.   Weiss v. Heitkamp, 127 Mo. 30; Kelley v. Johnson, 28 Mo. 249; Miller v. Freeman, 40 Ark. 62; 1 Perry on Trusts, par. 126, p. 163.   (2)   Equity views with disfavor suits brought after the death of one of those whose estate is sought to be charged, where the fraud alleged was known before such death, and the suit might have been brought during the lifetime of the party; and where, without reason, the suit is delayed until after his death such laches must be held fatal.   Lenox v. Harrison, 88 Mo. 497; Campean v. Vandyke, 15 Mich. 371; Russel v. Miller, 26 Mich. 1.   (3)   Plaintiff contends that the statute of limitations does not run because J. Wilson McMurray removed from the State of Missouri. And at the time of the last payment J. Wilson McMurray was not a resident of the State; and section 4282 of the statutes would not apply to prevent the running of the statute.   Orr v. Willmarth, 95 Mo. 212.   Appellant claims that because his ancestor was in possession the statute does not run.   The testimony shows that Maj. McMurray bought the land, took the title and placed his mother there and kept her and maintained her.   Burdett v. May, 100 Mo. 20.

MARSHALL, J.—This is a proceeding in equity to declare a resulting trust in favor of the plaintiff, to thirty and twenty-eight hundredths acres of land, in Jefferson county, Missouri, being the south part of the southwest fractional quarter of section 17, township 41 north, range 6.

The petition charges that on July 28, 1870, J. Wilson McMurray purchased the land with the money of his mother, Eliza McMurray, for the purpose of securing to her a home, and that he wrongfully and without her knowledge took the title thereto in his own name; that she entered into the possession of the premises and claimed them as her own against the world, exercising all acts of ownership thereover until her death in 1899; that by her last will she devised the premises to her son, the plaintiff; that the defendants are the widow and children, respectively, of said J. Wilson McMurray, deceased.

The answer is a general denial, with special pleas, first, that J. Wilson McMurray purchased the land with his own money; second, that he was in possession thereof from the time of the purchase until his death in 1898, and that the defendants have been in possession thereof ever since; third, that he improved the property, kept it in repair and paid the taxes thereon for thirty years; fourth, the ten, twenty-four and thirty year statutes of limitation; fifth, that the amounts paid for improvements and taxes exceed the value of the land; sixth, the statute of frauds.

The reply alleges that Eliza McMurray did not know until within ten years before this action was commenced, to-wit, September 5, 1899, that the title had been so taken in the name of her son, J. Wilson McMurray; that the money expended for improvements and taxes was her money, and that at the time of the purchase of the land J. Wilson McMurray was a resident of this State, but that within six months thereafter he

removed therefrom and has not since resided in this State. The trial court entered a decree for the defendants and the plaintiff appealed. This being a bill in equity the facts and circumstances will be stated in the course of the opinion.

For many years prior to July 6, 1870, John D. McMurray was engaged in the iron foundry and architectural business in St. Louis. He had several partners, but on the day stated the firm was McMurray, Smith and Judge, each having one-third interest. On the said day he died intestate, leaving a widow, Eliza McMurray, and two sons, J. Wilson McMurray and Robert E. McMurray, the plaintiff. Shortly before his death he conveyed certain property in St. Louis and his interest in the firm to his son J. Wilson McMurray, by a deed absolute on its face, but the son at the same time executed a declaration of trust, wherein he acknowledged that the property was held in trust for the father for his life and for his wife and sons thereafter. John D. McMurray left a policy of insurance in favor of his wife for three thousand dollars, which J. Wilson McMurray collected. He also sold the leasehold in St. Louis, which was occupied as a homestead, for five hundred dollars. With this thirty-five hundred dollars, together with twelve hundred and ninety-five dollars and fifty cents which he drew out of the firm, and perhaps other money of the estate, he purchased the property in question, declaring at the time and many times thereafter, to his partner, Judge, and to others and by letters to his mother, that it was purchased with the means aforesaid, as a home for his mother. As soon as it was purchased, he put her into possession and she remained in open, adverse, continuous and uninterrupted possession from 1870 until her death in 1899, and during all that time exercised the usual acts of ownership thereover.

From 1870, when he became trustee as aforesaid, J. Wilson McMurray, continued to manage the family

interest in the firm until 1881, during which time he drew out of the firm as such trustee the sum of twelve or thirteen thousand dollars, of which he paid his mother from three hundred to five hundred dollars a year for her support, and paid his brother the plaintiff nothing, so far as the record shows. In 1881 his mother and brother became dissatisfied with his management of the trust property, and began a suit against him for an accounting. The result was a compromise whereby the partnership was converted into a corporation and each received stock in proportion to their interest. In a letter to his mother in 1882, he said that while he was managing the family affairs she had received all the money that was drawn out of the firm and he received none, but that she had insisted on a change, and that he would have nothing more to do with it. In the light of the uncontradicted evidence in this case, this statement can not be reconciled with the facts, for if he received twelve or thirteen thousand dollars from the firm between 1870 and 1881, and three thousand dollars life insurance and five hundred dollars from the sale of the leasehold in St. Louis, and expended fifty-five hundred dollars for the property in controversy and fifty-five hundred dollars for the support of his mother, there would still remain forty-five to fifty-five hundred dollars of the amount he had so received, which he did not turn over to his mother or his brother. And the sum so remaining in his hands would be fully as much as his share of the family property amounted to. So that upon any showing that has been made in this case, he has received fully as much from the estate inclusive of this property as his share amounted to, and of right, therefore, this property belongs to his mother and his brother.

In addition to this it nowhere appears that J. Wilson McMurray had any means, outside of his interest in the firm, with which he could have purchased this property. He was an officer in the army, with the rank

of a major, and had a family to support, and it is not shown that he employed any money received by him from that source to the payment of the purchase price of the property in question.

Thus it clearly appears from the declarations of J. Wilson McMurray, both oral and written, that he purchased this property with the three thousand dollars insurance money that belonged to his mother, and the five hundred dollars resulting from the sale of the leasehold in St. Louis, and with trust funds, for a home for his mother, and it also appears that he put her in possession thereof and she occupied it and claimed it as her own for twenty-eight successive years before his death, and that he never was in possession thereof at any time and never claimed to own it at any time or to any person. In addition to this it is also demonstrable that upon a just accounting he received and retained a sum fully equal to his share of the estate, and that this property and the amount his mother received for living expenses would not exceed the amount she and the plaintiff were entitled to resulting from the insurance money, the sale of the leasehold and their share of the twelve or thirteen thousand dollars that J. Wilson McMurray received from the trust estate, and hence this property represents money that belonged to them and not to him.

The law is settled that a resulting trust will not be declared unless the evidence is clear, strong, unequivocal and so definite and positive as to leave no room for doubt in the mind of the chancellor. [Curd v. Brown, 148 Mo. l. c. 92, and cases cited.]

It is also the practice of this court in equity cases to give all proper deference and respect to the finding and judgment of the chancellor, but such action of the trial court is not conclusive.

In the case at bar the evidence adduced by the plaintiff measures up to the full requirements of the rule. It is clear, positive, direct, unequivocal and

such as admits of no room for doubt. It comes from respectable and honorable and disinterested sources, and is confirmed by the letters and conduct of J. Wilson McMurray himself. It admits of but one construction. It is the clearest case of a resulting trust that has come under the observation of this court. As against this showing the defendant makes no showing except to offer in evidence a deed of trust that was on the land at the time he purchased it, and this throws no light whatever on the questions involved in this case, for no one denies that there was such a deed of trust on the land at that time. It is the same deed of trust that J. Wilson McMurray referred to in his letter to his mother of January 13, 1871, and concerning which he said fifteen hundred dollars of which would have to be paid on May 1, 1871, and which he told her he might have to ask her to let him have the money resulting from the sale of some property she owned in Carondolet to use in the payment of. This circumstance alone dispels the idea that he was buying the property for himself or with his own means.

Under such a showing the plaintiff is clearly entitled to a decree as prayed under the law of this State. [Bird v. Ward, 1 Mo. 398; Stephenson v. Smith, 7 Mo. 610; Valle v. Bryan, 19 Mo. 423; Rankin v. Harper, 23 Mo. 579; Kelly v. Johnson, 28 Mo. 249; Baumgartner v. Guessfeld, 38 Mo. 36; Buren v. Buren, 79 Mo. 538; Sell v. West, 125 Mo. l. c. 630; Shaw v. Shaw, 86 Mo. 594; Boynton v. Miller, 144 Mo. 681; James v. Groff, 157 Mo. 402; Miller v. Slupsky, 158 Mo. 643; Rice v. Shipley, 159 Mo. 399; Johnston v. Johnston, 173 Mo. 91; see, also, 15 Am. and Eng. Enc. Law (2 Ed.), p. 1132, et seq.]

The defense of the statute of frauds is untenable, as the statute has no application to a resulting trust. [R. S. 1899, sec. 3417; Cloud v. Ivie, 28 Mo. 578.]

The defendant, however, relies on the ten, twenty-four and thirty year statutes of limitation. The evi-

dence is uncontradicted that at the time of the purchase of the property in 1870, J. Wilson McMurray resided in this State, and that within six months thereafter he went into the army, was stationed at various points, married in New York, and never lived in this State afterwards and was living with his family in New York when he died. It also appears that his mother never knew until after 1891 that he had taken the title in his own name and that this suit was begun within ten years thereafter.

If, as is now found to be the fact, he held the title as a mere trustee for his mother, the statute of limitation would not be a bar to the suit under the circumstances stated, for the facts constituting the claimed bar to her claim of a resulting trust were not brought home to his mother until 1891. [R. S. 1899, sec. 4282; Buren v. Buren, 79 Mo. l. c. 542, and cases cited; Burdett v. May, 100 Mo. l. c. 18; 15 Am. and Eng. Enc. Law (2 Ed.), p. 1205.]

It follows that the judgment of the circuit court must be reversed and the cause remanded to that court with directions to enter a decree declaring a resulting trust in favor of the plaintiff, and divesting the title out of the defendants and vesting it in the plaintiff. All concur.