EMMA STOFF, Appellant; v. MARY SCHUETZE and LOUIS C. REESE.

Division One, April 8, 1922.

1. **ADMINISTRATOR: Resulting Trust: Purchasing Land With Estate Funds.** Where an administrator of an estate purchased land at an execution sale under a judgment in favor of the estate, with funds of the estate, and took title thereto in his own name, he held the property in trust for the estate and those entitled thereto.

2. **WITNESSES: Party in Interest Competent: Declarations of Deceased Person.** An heir is a competent witness to testify to declarations of an administrator who bought lands with estate funds and

took title in his own name, to the effect that he held such land for those interested in the estate, notwithstanding such administrator was dead at the time of the trial, as such declarations were in effect admissions in disparagement of his title and were made while he was in possession of the land, and were accordingly competent against him and all claiming under him.

3. LIMITATIONS: Administrator as Trustee: Statute Does Not Apply. The administrator being a trustee for the heirs of land bought with estate funds, the Statute of Limitations did not apply to them, particularly in view of the fact that during his life he advised them not to bother about the land while he was living, warned them against consulting lawyers, admonished them not to go to court and assured them they would get what was coming to them when he died, and they acquiesced and made no investigation during his life.

4. ———: ———: Notice to Distributees of Adverse Claim. Upon the death of such administrator and the probate of his will, such beneficiaries, having made an investigation and found that he had taken title in his own name to land bought with estate funds and had devised his estate to his second wife, were thereby charged with notice of his adverse claim, and the Statute of Limitations began to run against them from that time.

5. FINAL SETTLEMENT: Undistributed Assets on Hand: No Discharge. Where the final settlement of an administrator showed a balance due him from the estate, and also showed uncollected notes due the estate exceeding the amount of such balance, and none of his settlements accounted for or mentioned land bought with estate funds but deeded to him, or the rents and profits therefrom, and the final order of the probate court did not discharge him, but merely provided that "he be no longer required to make annual settlements," he still remained within the control and jurisdiction of the court and was not released from liability for the undistributed assets, and the distributees were entitled to a decree vesting them with the title to such land.

6. RESULTING TRUST: Equitable Relief for Plaintiff Enures to Defendant: Undenied Material Allegations. Where plaintiff, in a suit to declare a trust in land and to be vested with title thereto and for an accounting of rents and profits, alleged that she and her brother, one of the defendants, were equally entitled thereto as devisees in remainder under the duly probated will of their father, and such allegations were not denied, they being material stood admitted, and the plaintiff being held entitled to recover, such recovery enures to the equal benefit of said brother.

7. MARRIED WOMAN'S ACT OF 1875: Prior Marriage: Wife's Personalty: Rights of Husband. The Married Woman's Act of 1875

Stoff v. Schuetze.

did not apply to marriages in existence at the time of its passage or to rights which had then accrued, and hence where the husband of such marriage had, prior to the passage of such act, received the money coming to his wife from her father's estate and had invested it in land, taking the title in his own name, he thereby reduced such money to his own possession, and the statute did not operate against him, and his devise of such land to his second wife vested her with the title, and the children of his first wife by her first husband could not recover it on the theory that their step-father was a trustee thereof for their mother and after her death for them, particularly in view of the fact that in 1891 she had executed an assignment, acknowledged substantially as required by the statute relating to real estate, of all of her inheritance to him, therein referring to its use in improving such land.

8. **APPELLATE PRACTICE: Death of Respondent: Revivor.** This case having been continued in the Supreme Court five times by stipulation of counsel, and counsel for plaintiff having thereafter suggested the death of the defendant against whom the relief was sought, and thereafter counsel for such defendant having suggested that the cause be revived against her legal representative and heirs, and entered his appearance as counsel for such parties, but no formal order of revivor having been made, the court now orders that the cause be revived against such legal representative and heirs, and the judgment is reversed and cause remanded to be proceeded with in accordance with the opinion.

Appeal from Franklin Circuit Court.—*Hon. R. A. Breuer,* Judge.

REVERSED AND REMANDED.

*James Booth* and *Jesse H. Schaper* for appellant; *Shepard Barclay* of counsel.

(1) An executor or administrator is a trustee, and when he purchases property with funds of the estate he holds the property in trust for the estate and those entitled thereto; and it makes no difference whether the deed be to him as executor or administrator or not. Harney v. Donohoe, 97 Mo. 144; Hynds v. Hynds, 274 Mo. 123; Patterson v. Booth, 103 Mo. 402; 24 C. J. 200-1. (2) Where land is taken by the executor or administrator

in payment of a debt due the estate, the land becomes assets in his hands and not property held in his individual right, and it should by way of substitution be subjected by him to the payment of debts and legacies, and to distribution, like personalty. 24 C. J. p. 201, sec. 708; Mabary v. Dollarheide, 98 Mo. 198. (3) An administrator is a trustee, and cannot set up the Statute of Limitations in bar to the next kin or persons entitled to the distribuion of the assets of the estate. To a suit by a distributee for his share against an administrator, holding the fund in trust, the Statute of Limitations does not apply. No lapse of time is a bar to a direct trust, or a fraud, as between trustee and beneficiary. Rubey v. Barnett, 12 Mo. 3; Decouche v. Savetier, 3 Johns. Ch. 190; Dillon v. Bates, 39 Mo. 292. (4) The so called "final settlement" of Schuetze in 1863 did not release him from the trust. It does not purport to discharge him; no order of distribution was made, and the trust imposed by the facts was not changed. Rugle v. Webster, 55 Mo. 250; Ewing v. Parrish, 148 Mo. App. 500; Rogers v. Johnson, 125 Mo. 202. (5) The declarations of Schuetze while in possession of the land were admissible as original evidence. 1 Greenl. Evi. (16 Ed.) sec. 108; Boynton v. Miller, 144 Mo. 681; Anderson v. McPike, 86 Mo. 293. (6) The facts show that it was a fraud on plaintiff for Schuetze to dispose of these tracts contrary to the trust on which he admitted he held them. But that could not be, and was not, discovered until his will was known by probate in 1915; so plaintiff is not barred. R. S. 1919, sec. 1317; Bank v. Nichols, 235 Mo. 401. (7) The investment of the funds of plaintiff's mother by Schuetze, in his own name, would raise a trust for her. Holman v. Holman, 183 S. W. 623. (8) The facts in evidence show an express declaration of trust for the children of the beneficiary, and that a writing to that effect was executed and destroyed by Schuetze. The inference must be that said paper writing was a declaration of the trust he verbally agreed to. Pomeroy v. Benton, 77 Mo. 64; Shawhan v. Distill. Co., 195 Mo. App. 450. (a) The de-

fendant's Exhibit D is insufficient to divest the estate of plaintiff in said property, already vested in her by said trust; and was nugatory under Missouri laws. R. S. 1919, sec. 7328; Moss v. Ardrey, 260 Mo. 595. '(9) There could be no start for the bar by limitation before the death of Schuetze, as he would be entitled to possession of the land until then, as tenant by curtesy, there having been a child born of his first marriage. Roberts v. Nelson, 87 Mo. 229; Bradley v. Railroad, 91 Mo. 493.

*John W. Booth* for respondent.

(1)   The Statutes of Limitation apply to all actions saving those which by statute are specially excepted. Rogers v. Brown, 61 Mo. 187; Adair v. Adair, 78 Mo. 635; Buren v. Buren, 79 Mo. 538; Hoseter v. Sammelsmann, 101 Mo. 619; Franklin v. Cunningham, 187 Mo. 184; Freeland v. Williamson, 220 Mo. 217; Hudson v. Cahoon, 193 Mo. 547. (2) In express technical trusts the Statute of Limitations does not begin to run until the trust in denied by the trustee; but the *cestui que trust,* in case of such denial, is limited to the period allowed for the recovery of legal estates at law. In implied trusts, the Statute of Limitations begins to run as soon as the facts are brought to the knowledge of the *cestui que trust* so that he can take steps to enforce the trust. Keeton's Heirs v. Keeton's Admr., 20 Mo. 530; Buren v. Buren, 79 Mo. 542; Hunter v. Hunter, 50 Mo. 445; Smith v. Ricord's Admr., 52 Mo. 481; Landis v. Saxton, 105 Mo. 486; Shelby County v. Bragg, 135 Mo. 291; Loomis v. Railroad, 165 Mo. 469; Callan v. Callan, 175 Mo. 346; State ex rel. v. Yates, 231 Mo. 276; 25 Cyc. 1159; 36 Cyc. 27. (3) Failure to discover fraud will not toll the statute unless the party sought to be charged as trustee does some act preventing discovery. State ex rel. v. Musick, 165 Mo. App. 214. (4) The burden is on the party seeking relief against fraud to show that he did not have notice within the period of limitation. Central Bank v. Thayer, 184 Mo. 61. (5) If a party against

whom an implied trust is sought to be established is in possession, or if the *cestui que trust* has notice of the main fact constituting the fraud, the statute will commence running from that time.    Hunter v. Hunter, 50 Mo. 452. (6)    Prior to the time the Married Woman's Act of 1875 went into effect the right of a husband, with or without the consent of his wife, to reduce to his possession and use as his own his wife's personal assets and money, including money arising from sale of her real estate, as at common law, was complete.    Tillman v. Tillman's Estate, 50 Mo. 40; Hart v. Leete, 104 Mo. 315; Leete v. Bank of St. Louis, 141 Mo. 574.    (7)    The existence of a life estate is no impediment to an action by the remainderman for equitable relief in a matter affecting his title as remainderman.    16 Cyc. 663; Hoester v. Sammelmann, 101 Mo. 619.    (8)    Proof that a paper was destroyed, not accompanied by any evidence of the contents of the paper, cannot be taken as evidence of a written declaration of trust in land.    Even a fragment of a writing failing to show a trust in personal estate which is inexplicit as to the property is inadmissible though it bears the signature of the party sought to be charged with the trust.    McKee v. Allen, 204 Mo. 685.    (9)    When one of the parties to the cause of action on trial is dead the other party is not a competent witness in his own behalf, or in behalf of any person jointly interested with him.    R. S. 1919, sec. 5410; Messimer v. McCray, 113 Mo. 387 to 390.    (a)    This disqualification extends to all matters which might be disputed by the deceased party relative to his personal conduct or declaration or admission.    Elsea v. Smith, 273 Mo. 396; Leava v. Ry. Co., 266 Mo. 151; Brown v. Patterson, 224 Mo. 639.    (10) The disqualification created by R. S. 1919, sec. 5410, is not removed by dismissal of the suit as to that party.    Messimer v. McCray, 113 Mo. 382.    (11)    Except as to newly discovered assets or performance of some formal act in execution of a sale made by an administrator, an administrator's power and authority as such is terminated by approval of his final settlement made after due no-

tice.  And when the final settlement shows a balance in favor of the administrator, and nothing for distribution, an order that the administrator be no longer required to make annual settlements is a discharge of the administrator.  It is on all-fours with the operation of an order of a circuit court overruling exceptions to the report of a referee which operates as an approval of the report. State to use v. Roland, 23 Mo. 95; Patterson v. Booth, 103 Mo. 402; Pomeroy v. Benton, 77 Mo. 83.

ELDER, J.—This is an action in equity, instituted February 25, 1916, seeking to establish a constructive trust in favor of plaintiff, Emma Stoff, and defendant, Louis C. Reese, in two tracts of land in Franklin County held by defendant Mary Schuetze.  Defendant Reese is the brother of plaintiff, and defendant Schuetze is the second wife of plaintiff's step-father.  The two tracts of land involved are referred to in the record as the 30-acre tract and the 31-acre tract.

The petition is in two counts.  The first count alleges that plaintiff's father, John D. Reese, died in 1859, leaving surviving him his widow, Maria S. Reese, and plaintiff and defendant Reese, his only children; that at the time of his death he was seized and possessed of 54 acres of land, upon which he resided, and about $1700 worth of personal property, consisting in part of ten notes of one Johann Weyrick aggregating $995, given for the purchase price of the 30-acre tract of land in suit; that by his last will, duly admitted to probate, said John D. Reese left all of his real and personal estate, after the payment of debts, to Maria S. Reese, his widow, for life, with remainder to plaintiff and defendant Reese equally; that his widow duly qualified as executrix under the said will, and, as such, recovered judgment on April 18, 1860, against the aforesaid Johann Weyrick, for $112.01 on one of the aforesaid purchase-money notes given by him; that Maria S. Reese subsequently married one John G. Schuetze, whereupon her letters as executrix were revoked, and her husband was appointed adminis-

trator *de bonis non* of the estate of said Reese; that said
John G. Schuetze, as such administrator, thereupon
caused an execution to be issued upon said judgment ob-
tained against Weyrick as aforesaid, by virtue of which
the 30-acre tract in suit was levied upon and sold, on
October 5, 1860, by the sheriff of Franklin County; that
at such sale said John G. Schuetze was the highest and
best bidder for the price and sum of $135; that the prop-
erty was sold to him for that price, the same being paid
by said Schuetze "with the moneys or funds in his hands
as such administrator and belonging to said estate of
John D. Reese, deceased," and that a sheriff's deed was
made and delivered to him by the name of "John Schut-
ty;" that said Schuetze and his wife Maria S., from
the date of their marriage, lived upon the 54 acres of
land left by John D. Reese and used the same, together
with the said 30-acre tract, until the death of the said
Maria S., which occurred in April, 1893, and that plain-
tiff and defendant Reese lived with them as members of
their family until plaintiff and said Reese each reached
the ages of their majority and at long intervals there-
after, the relations of all being friendly and happy; that
in 1894, John G. Schuetze married defendant Mary
Schuetze, and thereafter continued to live with her, until
the time of his death in February, 1915, upon the said
30-acre tract and an adjoining tract of 31 acres; that
at his death said John G. Schuetze left a will, duly ad-
mitted to probate, by which he devised, after the pay-
ment of debts and funeral expenses and certain nominal
bequests, all of his estate, real and personal, to defendant
Mary Schuetze, who has ever since been in possession of
said 30-acre tract; that although the said John G.
Schuetze had taken the deed to said 30 acres in his own
name, as a matter of fact the real ownership thereof and
title thereto was in Maria S. Schuetze for life, with re-
mainder in fee in plaintiff and defendant Reese; that
said John G. Schuetze, continuously from the date of the
sheriff's deed to him until his death, by his declarations,
acts and conduct, admitted that he was holding title to

said 30 acres in trust for plaintiff and defendant Reese and repeatedly warned them not to consult with lawyers and others with respect to their rights and interests in the same; that plaintiff and defendant Reese, reposing trust and confidence in said Schuetze, and relying upon said declarations, acts and conduct, and believing that title was securely vested in them, never made inquiry or investigation with respect to the status thereof, and did not discover that Schuetze had taken title in his own name and had paid the purchase price therefor with moneys belonging to them and their mother, and did not discover that Schuetze had by his last will devised said tract to defendant Mary Schuetze, until long after the death of said John G. Schuetze; that the acts aforesaid were a fraud upon the rights of plaintiff and defendant Reese and their mother; that defendant Mary Schuetze has refused and still refuses to recognize the title of plaintiff and defendant Reese; wherefore plaintiff prays a decree declaring John G. Schuetze to have been a trustee of said 30-acre tract for plaintiff and defendant Reese, declaring defendant Mary Schuetze such a trustee, and directing said Mary Schuetze to account for the rents and profits of said tract.

By the second count of the petition, after alleging the relationship of the parties as above mentioned, plaintiff charges that her mother, Maria S. Schuetze, being the owner and in possession of $600, and desiring to invest the same for the use of herself, plaintiff, defendant Reese, and a daughter Wilhelmina, agreed with her husband, John G. Schuetze, to invest said sum in the purchase of the 31-acre tract in suit, and that the balance of the purchase money, amounting to $600, should be paid out of the rents and profits of said 31-acre tract and other adjoining real estate, owned by said Maria S. Schuetze, plaintiff and defendant Reese; that pursuant to said agreement said John G. Schuetze, on March 16, 1874, purchased the said 31-acre tract from one Frederick Peters, applying and using the $600 belonging to Maria S. Schuetze, and thereafter the rents and profits

aforesaid, and taking the deed thereto in his own name; that afterwards said tract was improved by the erection of buildings and fences thereon, the cost being paid out of the rents and profits derived from said tract. The count then proceeds with allegations similar to those contained in count one, reciting: The subsequent marriage and death of John G. Schuetze; the making by said Schuetze of his last will, devising the 31-acre tract to defendant Mary Schuetze; the admission by said Schuetze that he was holding title to said tract for plaintiff and defendant Reese, their mother and her daughter Wilhelmina; the warning given them about not consulting others with respect to their rights and interests; the lack of investigation by plaintiff and defendant Reese as to the true status of their title; and the fraud perpetrated upon them. The relief sought as to the 31-acre tract is the same as that prayed for in the first count with respect to the 30-acre tract.

The separate answer of defendant Mary Schuetze denies that the notes of Weyrick were given for purchase money; denies that the deed from the sheriff to John G. Schuetze was made to "John Schutty," but avers that it was made to "John Schutz;" denies that the consideration for said deed was paid from the funds of the Reese estate; denies that title to the 30-acre tract was ever vested in Maria S. Schuetze for life, with remainder to plaintiff and defendant Reese; denies that John G. Schuetze at any time declared that he was holding title to said tract in trust for plaintiff and defendants, or that he at any time warned plaintiff and defendant Reese not to consult with lawyers or others. The answer then admits the purchase of the 31-acre tract from Peters, but denies that the same was bought pursuant to any contract with Maria S. Schuetze and that any part thereof was paid for with moneys belonging to her. It further admits that Maria S. Schuetze was the owner of $600, but alleges that during her marriage to John G. Schuetze he used the said money in building improvements on his farm and the 31-acre tract, and that thereafter said

Maria S. Schuetze, in consideration of love and affection and one dollar, assigned her interest therein to him. The answer further alleges that John G. Schuetze made final settlement of his administration of the estate of John D. Reese, and was discharged as administrator, by reason whereof the property devised by him to defendant Mary Schuetze is not liable to answer any demand asserted by plaintiff. The answer concludes by alleging that the deeds by which John G. Schuetze acquired were conveyances in fee simple, that since the delivery thereof the said John G. Schuetze and defendant Mary Schuetze have held possession of the premises conveyed as absolute owners thereof, that neither the said John G. Schuetze nor defendant Mary Schuetze ever in writing constituted or declared any trust in said lands, that plaintiff has been guilty of laches, and that her alleged right of action accrued during her minority and was not instituted within thirty years next after she attained her majority, by reason of which it is barred.

The reply was a general denial.

Henry Ehlers, brother of Mary Reese, wife of John D. Reese, testified on behalf of plaintiff that he had purchased the share of his sister Mary in her father's estate, paying her $612 or $613 therefor.

Louis C. Reese, defendant, testified on the part of plaintiff that he was born May 3, 1857, and his sister, plaintiff herein, was born January 18, 1856; that the 54-acre tract was that upon which his mother and step-father, John Schuetze, lived as a homestead; that he lived with his step-father, Schuetze, and worked for him on the farm until he was twenty-one years of age; that when at work with Schuetze they often had conversations about the 30-acre tract; that Schuetze cleared all but about five acres of the tract; that Schuetze told him that his (the witness's) father had sold the 30 acres to Weyrick, who never paid anything on the land and that his mother had to have him put off of the same by the sheriff; that Schuetze also told him that when the land was advertised for sale there was no one to bid on it and so he

(Schuetze) "bid it in for the estate for costs."

"Q. Go on and state all he said. A. At other times there were conversations. This conversation was particularly when my sister and I were together strip-. ping tobacco and then he said he was administrator for the estate when he bid the land in and he was guardian for us children; he said that we would have to stay with him and work for him until we were of age.

"Q. Who was to have the possession? A. He told us he had the right to charge us board and clothes and for schooling, but he wouldn't do that, and we should let him have the use of that land while he lived.

"MR. JAMES BOOTH: He said what? A. He said we should let him have the use of that land while he lived.

"MR. SCHAPER: Did you make any answer to that? A. We told him yes, we would do that.

"Q. Anything more said? A. He said the 54 acres we would get possession of that when mother died, and the 30 acres we would get possession of that when he died.

"Q. Anything said about the management of the 30 acres, who should manage it? A. He wanted to be boss of it, and have the use of the land.

"MR. JAMES BOOTH: Tell what he said. A. That is what he said.

"MR. SCHAPER: Did you have any more conversations of this character? A. Yes, sir, we had conversations about that a great many times; he spoke of it and told the same thing is the same way.

"Q. What answer did your sister make to the question which he asked in that conversation? A. She said yes, we would do it.

"Q. Tell the court about some other conversations you had with him with respect to this 30-acre tract of land? A. There were other conversations, when we were in the woods and making rails, cord wood and such as that.

"Q. On this tract of land? A. Yes, sir, and on the 54 acres. We would generally be working together in the winter time and quite often talked about it. . . .

"Q. What were the relations between your step-father and you and your sister with respect to whether they were friendly or unfriendly? A. We were always friendly.

"Q. Visited each other? A. Yes, sir.

"Q. How long did that relation continue? A. All of the time.

"Q. During all your acquaintance with him, did you ever hear John Schuetze make any claim to ownership to this 30 acres of land? A. No, sir.

"Q. Tell the court what statements he made to you in regard to warning you against lawyers? A. He told us from childhood on that we should never have anything to do with lawyers and never go to court; he raised us that way, and we believed that way.

"Q. Tell what he said in connection with this land? A. He said we should let him have the use of this land while he lived and he would see that we would get what was coming to us when he died, and not to go to no court or have anything to do with lawyers.

"Q. Did you have more than one conversation of that character? A. Yes, sir, he preached that to us quite often.

"Q. What was he talking about when he referred to this warning against going to court? A. He said that we should let him have the use of that land and not bother while he was living, we didn't have to see any lawyers and go to court; he said the lawyers would pull the skin over our eyes; that is the expression he used always, and he preached that to us all the time from little on.

"Q. Did you ever go to see any lawyer or look up this matter in respect to this tract of land? A. No, sir. . . .

"Q. When did you first investigate as to the facts relative to the title to this 30 acres? A. About three months after he died.

Stoff v. Schuetze.

"Q. Why didn't you make the investigation soon-er?" (Objection, which was overruled). "A. We al-ways took him at his word, we never thought we had to investigate anything. . . .

"Q. Do you recall the conversation taking place between you and your step-father with reference to the estate left by your mother? A. Yes, sir.

"Q. Please state that to the court. A. I lived at New Haven at that time, and I was notified that she died; I went down home and stayed all night and went to the funeral, and after she was buried and before we left the cemetery I asked him if she had any papers or money or anything and he says, 'No.' He says, 'You know her money is in the 31 acres and you all will get possession of that when I die.'

"Mr. John W. Booth: He said, 'No, you know her money is in the 31 acres and you will get possession of that when I die?' A. Yes, sir.

"Mr. Schaper: What did you say? A. I told him that was all right, I was satisfied."

With respect to the purchase of the 31-acre tract with the use of $600 belonging to his mother the witness Reese testified as follows:

"Q. Tell what agreement or transaction was had beween your step-father and mother with reference to the six hundred dollars? A. They spoke of buying that land.

"Q. Who spoke of it? A. My step-father and Christ Ehlers. My step-father asked if my mother would let him have the money to invest in the land; my mother told him she wanted to keep this money for her children; then my uncle Christ Ehlers told her to invest it in the land.

"Q. In the same conversation? A. Yes, sir; and have a contract made to that effect, then we children would get that, let him use the land and we would get it after a while, and my step-father agreed to do that.

"Q. Was that land bought? A. Yes, sir.

"Q.  How many acres?  A.  31 or 32 acres, something close on to 32, right after that conversation.

"Q.  Do you know if your step-father had any money at that time?  A.  No, I don't know, I think not.

"Q.  You may testify from statements made to you whether he had any money or property?  A.  He said if she would invest $600 in the land he would try to get the other $600; the land was $1200.

"Q.  After this conversation was had, who got the possession of this 31 acres?  A.  My step-father, I suppose.

"Q.  Right away?  A.  Yes, sir.

"Q.  Is there any dwelling house on the 31 acres? A.  Yes, sir.

"Q.  That is the dwelling house in which your step-father died and lived with his last wife?  A.  Yes, sir.

"Q.  How far is that from the 30 acres spoken of in your testimony.  A.  Adjoining it, right by the side of it.

"Q.  Did you hear any conversation had between your mother and your step-father with respect to this 31 acres after the conversation you referred to about the contract?  A.  Yes, sir.

"Q.  Where did the conversation occur?  A.  They had a conversation in the house a year or two later; she insisted on having possession of the contract, and he said the contract was safe, but she insisted on having it in her hands, so he went in another room and got it, or anyways I don't know what was in it, but he came and brought it in.

"Q.  He had a paper writing?  A.  Yes, sir; he tore it in two and she turned away and cried and he went to the stove and raised the lid and threw it in.

"Q.  Did he say anything?  A.  No, sir; he didn't say anything more, he went back in his room.

"Q.  Did that subject come up again between your father and your mother?  A.  Yes, sir; she asked for some writing for the money she had invested in the land; he said, 'Well, they will get it all anyway when I die,

there is no use to make any writing.' That was the last of the conversation.

"Q. Did they have more than one conversation of that character? A. Yes, sir; several times.

"Q. And in relation to that subject-matter, the 31 acres? A. Yes, sir; they would speak about that several times, and he would always tell-her, there was no use to make any writing, the children would get it when he died."

Plaintiff introduced in evidence the inventory of the estate of John D. Reese, showing, in part, ten notes of John Weyrick aggregating $995, and 54 acres of land in Franklin County, being part of a tract acquired from Jacob Gall and wife; also the first and final settlements filed in said estate. One of the vouchers relating to disbursements shown by said final settlement evidences a cost bill, receipted by the sheriff, acknowledging receipt from John Schuetz of the sum of $19.75 for costs in the suit of Maria S. Reese, Admr., vs. John Weyrick.

Plaintiff also introduced in evidence a deed from Amos W. Maupin, Sheriff of Franklin County, dated October 8, 1860, and recorded October 10, 1860, reciting the judgment obtained by Maria S. Reese, Executrix, against John Weyrick, the execution issued thereunder against the 30-acre tract, and the sale of said tract, pursuant to advertisement, to "John Schutz" for a consideration of $135; also warranty deed from Frederick Peters, dated March 16, 1874, and recorded March 21, 1874, conveying to "Johann Schuetz," for a recited consideration of $1200, the 31-acre tract; also the petition, summons, sheriff's return, and record entry of judgment for $112.01 rendered in favor of Maria S. Reese. Executrix of Eestate of John D. Reese, in the suit of Maria S. Reese against John Weyrick upon his note for $95, together with the writ of execution issued on said judgment and the return of the sheriff thereto; also entries from the records of the County Court of Franklin County, sitting in probate, showing the admission to probate of the will of John D. Reese, the appointment of Maria S.

Reese as guardian of Emma Reese and Louis Reese, the appointment of "John Schuetz" as administrator *de bonis non* of the estate of John D. Reese, and the approval of the first and final settlements filed by said Schuetz as such administrator.

Plaintiff further introduced in evidence the last will of John Schuetze probated February 27, 1915, which, after directing the payment of debts, funeral expenses and certain legacies, devised the residue of his estate to his wife, Maria Schuetze.

Louis Reese, being recalled, testified for plaintiff that hundreds of times he had heard John Schuetze say that when he married the mother of witness he had but $100, with which he bought a team and wagon, and that statements of that character were often made to others, since deceased.

On behalf of defendant Mary Schuetze, and over the objection of plaintiff, there was introduced in evidence a deed of trust dated November 1, 1873, from Frederick Peters to M. B. Strickland, conveying the 31-acre tract as security for notes aggregating $700, which deed of trust was mentioned in the warranty deed dated March 16, 1874, by which Frederick Peters conveyed said 31-acre tract to "Johann Schuetz," and wherein it was recited that "the said Johann Schuetz assumes to pay said deed of trust."

Defendant Schuetze also offered in evidence, over the objection of plaintiff, another deed of trust, dated September 1, 1862, from John Schuetze and Maria, his wife, to Minna Van Spankeren, conveying the 30-acre tract as security for a note for $400, together with a certificate of payment of said note and of release of the said deed of trust.

For plaintiff, in rebuttal, defendant Reese testified that while his step-father, John Schuetze, was administrator, he heard him say that he and the mother of witness were going to Augusta "to pay the $400 debt that my father had borrowed from Spankeren." The final settlement filed by John Schuetze, as administrator of

the estate of John D. Reese, shows a disbursement as follows:

"No. 12 By all. Charles Spankern $400.

"By all. Interest 1 year & 9 months $70."

The foregoing somewhat fully outlines the case made. Other matters of evidence will be adverted to in the course of the opinion. The court found the issues in favor of defendant Mary Schuetze, and against plaintiff and defendant Reese, rendered a judgment and decree in favor of defendant Mary Schuetze, and dismissed plaintiff's petition. From this judgment and decree plaintiff has appealed.

I. Plaintiff contends that the court erred in finding for defendant Mary Schuetze on the first count of the petition, urging that the evidence shows that the 30-acre tract was held in trust for plaintiff.

A careful review of the evidence discloses that this tract was undoubtedly purchased by John Schuetze, at the sheriff's sale under execution issued upon the judgment theretofore rendered in favor of the estate of John D. Reese, for the benefit of the said estate. The amount of said judgment was $112.01. The voucher filed in connection with the final settlement of the estate of Reese shows interest on said judgment amounting to $5.61. The said voucher further shows cost paid to the sheriff, exclusive of $2 for deed, in the sum of $17.75. The sum total of the judgment, interest and costs is $135.37. The consideration recited in the deed from Sheriff Maupin to Schuetze is $135, or within 37 cents of this total. The record does not disclose that the $135 was paid by Schuetze out of his individual personal funds. The uncontroverted testimony of Louis C. Reese was that Schuetze stated that "there was no one to bid on it; during the war there was nobody wanted to buy land, and so he bid it in for the estate for costs." It clearly follows that in making the purchase, and taking title in his own name, Schuetze in reality bought for the estate. Being administrator

*Administrator: Trustee.*

*de bonis non* of the estate of Reese at the time, Schuetze became a trustee for those entitled to the said estate. [Harney v. Donohoe, 97 Mo. 141; Hynds v. Hynds, 274 Mo. 123; Patterson v. Booth, 103 Mo. 402; 24 C. J. 200, 201.] As stated in Harney v. Donohoe, supra, l. c. 144, the rule is that "an executor or administrator is a trustee, and when he purchases property with funds of the estate, he holds the property in trust for the estate and those entitled thereto; and it makes no difference whether the deed be to him as executor or administrator or not." And as further enunciated in Hynds v. Hynds, supra, l. c. 134, "When a trustee purchases property with trust funds and takes the title in his own name a trust results for the benefit of the trust estate and this may be followed in favor of persons not named in the deed in proportion to the amount invested by each. That this rule applies to executors, administrators and guardians of minors, as well as to other trustees, goes without saying." Furthermore, in the instant case the land purchased was in fact taken in payment of the debt of Weyrick to the Reese estate. Such being the case, Schuetze, the purchaser, took title in trust for the heirs and creditors of the estate. Thus in Mabary v. Dollarhide, 98 Mo. 198, where an administrator purchased lands under a judgment in an attachment proceeding instituted by him for a debt due the estate, taking the deed to himself as administrator, it was held that title passed to him as an individual, but that he held it in trust for the heirs and creditors of the estate.

That John Schuetze was holding title for the benefit of plaintiff and defendant Louis C. Reese is reflected by the statements made by him to said Reese during the time that Reese and plaintiff herein were living with Schuetze and their mother upon the homestead farm. The various conversations had by Reese with Schuetze, wherein the latter said that Reese and the plaintiff "should let him have the use of that land while he lived," that "he wanted to be boss of it and have the use of the land," that "the 54 acres, we would get possession of

that when mother died, and the 30 acres, we would get possession of that when he died,'' that ''he would see that we would get what was coming to us when he died, and not go to no court or have anything to do with law-yers,'' all tended to establish that he was holding the land in trust for plaintiff and defendant Reese. The conversations between the mother of plaintiff and de-fendant Reese and John Schuetze, testified to by Reese, wherein Schuetze said, ''They will get it all anyway when I die, there is no use to make any writing,'' tends to emphasize the fact that Schuetze fully recognized the rights of the children of the former Mrs. Reese. And the record does not reveal that Schuetze at any time prior to his death made claim of ownership to the 30-acre tract adverse to plaintiff and defendant Reese.

Learned counsel for defendant Schuetze urges, how-ever, that defendant Reese was not a competent witness, John G. Schuetze being deceased. When applied to the testimony under consideration, such is not the law. The declarations of Schuetze were made while he was in possession of the land, were in effect ad-missions in disparagement of his title, and were accord-ingly competent against him and all claiming under him. [Anderson v. McPike, 86 Mo. 293; Boynton v. Miller, 144 Mo. 681; Meier v. Meier, 105 Mo. 411; Wood v. Hicks, 36 Mo. 327; 1 Greenleaf, Evidence (16 Ed.) sec. 108.]

<span style="float:left">Admissions.</span>

Counsel for defendant further urges that plaintiff's action is barred by the thirty-year Statute of Limita-tions. This defense, however, is not here available. As we have said supra, John Schuetze, being administrator of the Reese estate at the time of purchase of the 30-acre tract, became a trustee for the heirs of Reese. Being such trustee, the Statute of Limitations does not apply as against distributees entitled to the estate. Thus in Rubey v. Barnett, 12 Mo. 3, l. c. 8, the doctrine was announced, that ''an administrator, being a trustee, cannot set up the Statute of Limitations in bar to the next of kin or persons entitled to the dis-

<span style="float:left">Limitations.</span>

tribution of assets.'' To the same effect is Decouche v.
Savetier, 3 Johnson's Chan. (N. Y.) 190. And again in
Dillon v. Bates, 39 Mo. 292, l. c. 301, the rule was thus
expressed: ''To a suit by a distributee for his share
against an administrator, holding the fund in trust,
the Statute •of Limitations does not apply. No lapse
of time is a bar to a direct trust, or a fraud, as between
trustee and beneficiary.'' Moreover, the fact that
Schuetze advised plaintiff and defendant Reese not to
bother about the land while he was living, that he warned
them against consulting lawyers and admonished them
not to go to court, coupled with his assurances that they
would get what was coming to them when he died, might
justly be said to have had the effect of causing them to
rely upon those assurances and of restraining them from
investigating and discovering the true status of the title
to said land. In this connection defendant Reese testified
that he and his sister always took Schuetze at his word,
''We never thought we had to investigate anything,''
and that they first investigated as to the title to the 30
acres about three months after Schuetze's death, which
occurred in February, 1915. Such being the case, in view
of the previous course of conduct of Schuetze, they
should not be held chargeable with notice that he was
claiming to hold adversely to them until that time, that
is, the time of his death, or the time of probate of his
will, which was February 27, 1915. The running of the
statute was accordingly postponed until then. [Buren v.
Buren, 79 Mo. 538; McMurray v. McMurray, 180 Mo.
526; Boynton v. Miller, 144 Mo. 681; 19 Am. & Eng.
Ency. Law (2 Ed.) 243.] As stated in Buren v. Buren,
supra, l. c. 542, the rule is that ''in implied trusts the
Statute of Limitations begins to run as soon as the facts
are brought to the knowledge of the *cestui que trust,* so
that he can take steps to enforce the trust.'' And that
rule is applicable here.

It is finally insisted that the final settlement filed
by John G. Schuetze as administrator *de bonis non* of
the estate of John D. Reese discharged Schuetze of all

liability. To this insistence we cannot give assent. The final settlement of Schuetze was filed March 4, 1863. While it showed a balance of 109.47 due the administra-

**Final Settlement: No Discharge.** tor, it also showed on hand $900 in notes of John Weyrick, which evidently had not been collected. Neither the final settlement nor the first annual settlement filed by Schuetze made mention of the 30-acre tract purchased by him or showed any rents or profits accruing therefrom. When the final settlement was made, Schuetze, in contemplation of law, remained in possession and charge of the notes of Weyrick, the 30-acre tract purchased in reality for the estate in discharge of a debt due the estate, and the rents and profits realized therefrom, as no distribution was shown to have been made by him of such assets. The order made by the court with respect to the final settlement was as follows:

"Final Settlement.

"Now, at this day comes John Schuetze, Administrator *de bonis non* of the Estate of John D. Reese, and proves to the court that he has given the necessary legal notice of his intention to make final settlement of said estate at this term of the court, and his vouchers being seen, and by the court understood, the court finds a balance in favor of said administrator of one hundred and nine dollars and forty seven cents, and that he be no longer required to make annual settlements."

Mr. Jesse H. Schaper testified that with the assistance of the county clerk he had examined the records of the county court and had found that the above mentioned order "is the last entry found of record in said court." It will be noted that no order of distribution or discharge was made. Accordingly, under the authorities Schuetze still remained within the control and jurisdiction of the court and was not released of liability as to assets undistributed. [Rugle v. Webster, 55 Mo. 246, l. c. 250; Rogers v. Johnson, 125 Mo. 202; Ewing v. Parrish, 148 Mo. App. 492, l. c. 500; 2 Woerner's Administration (2 Ed.) sec. 571, p. 1374.]

Entertaining the views above indicated, we therefore rule that plaintiff's claim of error is well founded and that the court should have found for plaintiff and defenant Reese on the first count of the petition.

II.   Plaintiff further contends that the court erred in finding for defendant Mary Schuetze on the second count of the petition, claiming that the 31-acre tract therein mentioned, purchased partly with the moneys of the mother of plaintiff, was held in trust by John G. Schuetze for the benefit of plaintiff.

An examination of the record shows that on July 10, 1891, Mary Schuetze seems to have executed the following instrument, introduced in evidence over the objection of counsel for plaintiff:

"Know all men by these presents, that I, Maria Schuetze, of the County of Franklin and State of Missouri, for and in consideration of love and affection and the sum of one dollars to me in hand paid by John Schuetz my husband, I do hereby assign, transfer and sell unto my said husband John Schuetz all of my inheritance, that I have inherited from my father Christian Ehlers, consisting of the sum of six hundred dollars, and which said money has been used for building and improvements on the farm of said John Schuetz situated in Survey 1964, in Section 36, Township 44, Range One west; to have and to hold the same, with all benefits thereunder forever.

"In witness whereof I have hereunto set my hand and seal this 10th day of July, 1891.

"MARY SCHEUTZ.

"Signed and delivered in presence of:
"DANIEL SIEBEL,<br>"PHILIP MULLER."

The same appears to have been recorded October 8, 1894, and to have been acknowledged as follows:

"State of Missouri, County of Franklin, ss.

"On this 10th day of July, 1891, before me personally appeared Marie Schuetz, to me known to be the person described in and who executed the foregoing instrument and acknowledge the same to she executed the same as her free act and deed.

"In testimony whereof, I have hereunto set my hand at my office in Washington the day and year first above written.

"HENRY H. THIAS,

"Justice of the Peace."

The execution and acknowledgment of the assignment was not denied or disproven, nor was the sufficiency of the acknowledgment attacked. It is, however, urged on behalf of plaintiff that the instrument was insufficient to divest plaintiff of an estate already vested in her by the trust created. In opposition to this claim it is contended for defendant Schuetze, as we gather from the brief, that John G. Schuetze reduced to his possession and use the $600 inherited by his wife, the former Mrs. Reese, and that therefore plaintiff's right never attached. This contention calls for a consideration of the Married Woman's Act of 1875.

The evidence shows that John G. Schuetze and Mrs. Reese were married in 1859 or 1860. It is not disclosed exactly when Mrs. Reese acquired the $612 or $613 from her father's estate; evidently, however, it was prior to the time that Schuetze purchased the 31 acres from Peters, which, according to the date of the deed thereto, was on March 16, 1874. The testimony of Louis C. Reese with respect to the disposition made of the $600, which testimony has been hereinbefore set out, shows that the same was invested by John G. Schuetze in the 31-acre tract, the deed thereto being taken in Schuetze's name. Such investment constituted a reduction of the fund by Scheutze to his own possession. Prior to the enactment of the Married Woman's Act of 1875, (Laws 1875, p. 61, approved March 25, 1875), the husband had the right to reduce his wife's personal property to his possession,

and this right was a vested one. [Leete v. Bank, 141 Mo. 574.] And furthermore the act did not apply to marriages in existence at the time of its passage or to rights which had then accrued. [Leete v. Bank, 115 Mo. 184, 141 Mo. 574.] Consequently, Schuetze and Mrs. Reese having been married in 1859 or 1860, and the investment of her moneys having been made prior to the enactment of the married woman's statute, and Schuetze's rights having already accrued, the statute did not operate against him. Moreover, it is fair to assume that the moneys were used with her consent, as later she formally assigned all her interest therein to Schuetze by the instrument above mentioned. And this assignment was acknowledged in a manner substantially complying with the statute relating to the acknowledgment of conveyances affecting real estate. The 31 acres having been devised by Schuetze to his second wife, Mary Schuetze, defendant herein, we are hence of the opinion, and so hold, that the learned trial chancellor committed no error in finding for said Mary Schuetze upon the second count of the petition.

III. The petition of plaintiff alleges that John D. Reese left a last will and testament, duly proven up and admitted to probate by the Probate Court of Franklin County, and that by said will the said Reese "bequeathed and devised, after the payment of his debts, all his said real and personal estate to his widow, the said Maria S. Reese during the remainder of her natural life, with remainder and the residue thereof to his children, the plaintiff and defendant, Louis C. Reese, absolutely share and share alike." The answer of defendant Schuetze makes no denial of these allegations. During the course of the trial counsel for defendant stated that it was not denied that John D. Reese died leaving a last will. The will was not introduced in evidence. However, the allegations above mentioned being not denied, and being material, they stood admitted. [R. S. 1909, sec. 1830; Wells v. Pike, 31 Mo. 590; Billings v. Iron & Rail Co., 86 Mo. App. 228; State ex rel. v. Henderson,

86 Mo. App. 482.] Accordingly, defendant Louis ˙C. Reese being entitled by the will of John D. Reese to a share equal to that of plaintiff herein, any recovery had by plaintiff hereunder must also enure to the equal benefit of defendant Reese.

IV. By stipulation of counsel for both parties this cause has been continued in this court five times, beginning June 2, 1919. In the meantime further complications have arisen, as on April 14, 1921, counsel for plaintiff have suggested the death of defendant Mary Schuetze. From the files before us it appears that at or about that time counsel for defendant Schuetze suggested that the cause be revived against "Ben A. Holman, Admr. Maria K. Schuetze, decd. respdt. and Clara Mönje and Augusta Holman, only heirs of Maria K. Schuetze who died intestate in Franklin County, Mo., March 3, 1921," and entered his appearance as counsel for such parties. No order of revivor however was made.

V. By reason of the last above, and in view of our rulings under paragraphs I, II and III, supra, our order therefore is that the cause be revived against the legal representative and heirs of defendant Mary Schuetze, and that the judgment and decree of the circuit court be reversed and the cause be remanded to be proceeded with in accordance with the views herein expressed. All concur.